KAMINSKI LAW, PLLC
Shanna M. Kaminski
P.O. Box 247
Grass Lake, MI 49240
(248) 462-7111
Email: skaminski@kaminskilawpllc.com

*Attorneys for Union Funding Source, Inc.*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| IN RE: § § § **HIGH PLAINS RADIO NETWORK, LLC** § § **Debtor.** § § § | Case No. 24-70089 Chapter 11 |

**OBJECTION TO EMERGENCY MOTION TO USE CASH COLLATERAL**

Union Funding Source, Inc. ("Union Funding"), by and through its undersigned counsel, for its Objection to Emergency Motion to Use Cash Collateral states as follows:

**INTRODUCTION**

1.  The Debtor sold accounts to Union Funding prior to the filing of the bankruptcy case and, as such, has no legal or equitable interest in the accounts it sold to Union Funding, but now seeks to use the accounts as cash collateral. The Debtor cannot use the property it sold to Union Funding pre-petition as cash collateral. Union Funding objects to the Debtor's request to use cash collateral to the extent it intends to use the property Union Funding purchased pre-petition that is not property of the estate.

**BACKGROUND**

1

2. On January 23, 2024, the Debtor entered into a Future Receivables Sale and Purchase Agreement with Union Funding ("**Agreement**"). A true and correct copy of the Agreement is attached hereto. Pursuant to the Agreement, the Debtor sold, assigned and transferred to Union Funding $130,500 (the "**Purchased Amount**") of Receipts. Receipts are defined in the Agreement as "the Purchased Percentage of all of [Debtor's] accounts receivable and payment rights arising our of or relating to [Debtor's] sale or delivery of goods and/or services due to Mercahnt after the date of this Agreement, whether paid directly by [Debtor's] customers or paid by others on [Debtor's] customers' behalves or as reimbursements." *See* Agreement, Pg. 1.

3. Per the express terms of the Agreement, Union Funding "purchased and shall own all the Receipts described in the Agreement up to the full Purchased Amount as the Receipts are created" and "[Debtor] shall have no legal or equitable interest in the Purchased Amount of Receipts." *See* Agreement, Section 1.9.1.

4. All Receipts purchased by Union Funding were to be deposited into a bank account that was designated in the Agreement ("**Account**") by the Debtor and then Union Funding would debit $815.63 ("**Daily Remittance**") of Receipts deposited into the Account daily until all Receipts purchased were obtained by Union Funding.

5. The Daily Remittance was to equal the Purchased Percentage, defined in the Agreement as 11.5%, of daily Receipts collected by the Debtor. The Daily Remittance was based upon historical revenue information of the Debtor and the Agreement provided for a reconciliation of the Daily Remittance to ensure the amount debited was equal to the Purchased Percentage. There was no time period within which the Debtor had to remit the Purchased Amount to Union Funding and Union Funding assumed the risk that the Debtor's business may slow down and that

Document Page 3 of 5

the Receipts would be remitted more slowly than anticipated or that the business would cease operation in the ordinary course of business. *See* Agreement, Pg. 1.

6. The Receipts purchased by Union Funding are "accounts" and/or "proceeds of accounts" as those term is defined by the Unform Commercial Code. As the transaction between the Debtor and Union Funding was a sale of accounts and/or sale of a right to payment, Union Funding automatically obtained a security interest in the Receipts it purchased and the security interest was perfected on attachment. *See* UCC §§ 1-201(37), 9-109(a)(3), and 9-309. Nevertheless, Union Funding filed a UCC Financing Statement with the Texas Secretary of State of January 24, 2024 to put others on notice of the transaction.

7. To date, Union Funding has not obtained $110,109.25 of Receipts it purchased from the Debtor.

**OBJECTION**

8. Union Funding objects to the Motion because the Debtor is proposing to use the Receipts that were purchased by Union Funding under the Agreement. The Receipts purchased by Union Funding are not property of the bankruptcy estate. *See, e.g., In re R&J Pizza Corp.*, 2014 Bankr. LEXIS 5461 (Bankr. E.D. N.Y. Oct. 14, 2014). Per the terms of the Agreement, the Debtor has no legal or equitable interest in the Receipts and Section 9-918 of the Uniform Commercial Code confirms that the Debtor has no legal or equitable interest in the Receipts.

9. Because the Receipts purchased by Union Funding are not property of the bankruptcy estate they do not constitute "cash collateral" that the Debtor may use pursuant to Section 363 of the Bankruptcy Code. Pursuant to Section 363(b)(1) of the Bankruptcy Code, a Debtor may only be authorized to use property that is property of the estate. Union Funding does not consent to the use of its property by the Debtor.

10. In *In re R&J Pizza Corp.*, the United States Bankruptcy Court for the Eastern District of New York held that receipts purchased in a nearly identical transaction were not property of the bankruptcy estate. In *R&J Pizza* the court prohibited the debtor from using the receipts that were purchased and ordered the debtor to turnover the receipts in accordance with the terms of the agreement between the Debtor and the company that purchased the receipts. *See id*.

11. This Court should similarly prohibit the Debtor from using the Receipts purchased by Union Funding. If the Debtor wishes to use cash collateral, the Court should only permit the use of funds that do not constitute the Specified Percentage of Receipts.

12. The Debtor is instead obligated to turn over the purchased Receipts to Union Funding in accordance with the terms of the Agreement. *See In re Florian*, 233 B.R. 25, 27 (Bankr. D. Ct. 1999) (directing trustee to turn over insurance proceeds that did not constitute property of the debtor's estate); *Matter of Georgian Villa, Inc.*, 10 B.R. 79, 84-85 (Bankr. N.D. Ga. 1981) (holding that, where it appears that the debtor has no beneficial interest in the property, such property should be turned over to its true owner). At the very least, the Debtor should be required to escrow the Specified Percentage of Receipts until the Court can make a determination as to whether the Receipts sold by the Debtor are property of the estate.

13. It is also worth noting that Union Funding's security interest in the Receipts it purchased is not even subject to Section 552 of the Bankruptcy Code because the security interest did not arise via a security agreement. Thus, so long as the Debtor continues to operate and generate Receipts the obligation to Union Funding is fully secured by the Receipts and its security interest in Receipts does not cut off as of the Petition Date.

14. As such, a replacement lien would be insufficient to protect Union Funding's interest in the Receipts it purchased from the Debtor. As the Receipts are Union Funding's

property that the Debtor has no legal or equitable interest in, no form of adequate protection would be sufficient to protect its interests in the Receipts, nor would it be appropriate as the Receipts are not even property of the estate that the Court can authorize use of under any circumstances.

**WHEREFORE**, Union Funding respectfully requests that this Honorable Court deny the Motion or, in the alternative, if the Court wants to grant limited use of cash collateral, require the Debtor to escrow the Specified Percentage of Receipts and not permit the Debtor to use the Specified Percentage of Receipts until a determination can be made as to whether the Receipts purchased by Union Funding are property of the estate and grant such other and further relief as this Court deems just and proper.

Date:  April 4, 2024                                Respectfully Submitted,

                                                    KAMINSKI LAW, PLLC

                                                    */s/ Shanna M. Kaminski*
                                                    SHANNA M. KAMINSKI
                                                    P.O. Box 247
                                                    Grass Lake, Michigan 49240
                                                    Tel: (248) 462-7111
                                                    skaminski@kaminskilawpllc.com