Paul H. Cross
Texas Bar No. 05131500
PAUL H. CROSS ATTORNEY AT LAW PLLC
11300 N. Central Expwy., Suite 604
Dallas, Texas 75243
Telephone:      214.926.5734
Facsimile:      214.269.1439
Email:  phclease@msn.com

ATTORNEY FOR HANMI BANK

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **Darian L Hampton DDS PA** | § | **Case No. 22-30469-11** |
| Debtor | § | **Chapter 11** |

## HANMI BANK'S MOTION TO COMPEL ASSUMPTION OR REJECTION OF EQUIPMENT FINANCE AGREEMENT

Hanmi Bank ("Movant") moves for entry of an order compelling Darian L Hampton DDS PA ("Debtor") to assume or reject an equipment finance agreement, and in support respectfully shows:

### Notice Under Local Bankruptcy Rules

**NO HEARING WILL BE CONDUCED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 12A24 EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, DALLAS, TEXAS 75242-1496 BEFORE 4:00 O'CLOCK P.M. ON JULY __, 2022, WHICH IS TWENTY DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK, AND A COPY MUST BE SERVED UPON THE COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING WILL BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH MOTION OR NOTICE IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

### Grounds

1.      This motion is filed under Sections 363 and 365 of the United States Bankruptcy Code (the "Bankruptcy Code").

2.      On March 16, 2022, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

4.      Partners Capital Group, Inc. ("PCG") and Debtor executed and entered into an Equipment EFA (the "EFA") dated July 28, 2022 regarding a Sirona Cerec Milling Unit (the "Equipment").

6.      A true and correct copy of the EFA is attached to this pleading as Exhibit 1 and incorporated by reference.

7.      The Equipment was to be and was provided and supplied by Kenali Inc. d/b/a Kenali Dental Equipment and Supplies.

8.      Debtor agreed under the EFA to make 60 equal successive monthly installments to Hanmi Bank in the amount of $1,060.00.

9.      Bankruptcy and insolvency of Debtor are events of default under the EFA.

10.      The EFA allows PCG, upon default by Debtor, to take possession of the Equipment through judicial process or extrajudicial means and to dispose of the Equipment.

11.      The indebtedness under the EFA was and is secured by a security interest granted by the Debtor in and to the Equipment.

12.      PCG perfected the security interest in the Equipment alleged above by filing a UCC-1 financing statement with the Texas Secretary of State on July 30, 2021.

13.       A true and correct copy of the Addendum to the EFA is attached to this pleading as Exhibit 2 and incorporated by reference.

14.      Bankruptcy and insolvency of Debtor are events of default under the EFA.

15.      The EFA allows PCG, upon default by Debtor, to take possession of the Equipment through judicial process or extrajudicial means and to dispose of the Equipment.

16.      The indebtedness under the EFA was and is secured by a security interest granted by the Debtor in and to the Equipment.

17.      PCG perfected the security interest in the Equipment alleged above by filing a UCC-1 financing statement with the Texas Secretary of State on July 30, 2021.

18.      A true and correct copy of the file-marked UCC-1 financing statement alleged above is attached to this pleading as Exhibit 3 and incorporated by reference.

19.     The Equipment was delivered to and accepted by Debtor, as shown by the Acceptance of Delivery shown in <u>Exhibit 1</u>.

20.     PCG paid the supplier of the Equipment the full purchase price for the Equipment, as shown by the true and correct copy of the invoice and payment confirmation attached to this pleading as <u>Exhibit 4</u> and incorporated by reference.

21.     PSG assigned and transferred the EFA to Amur Capital Equipment Finance, Inc. ("Amur") and its rights in the Equipment for value, as shown by the true and correct copy of the Broker Assignment attached to this pleading as <u>Exhibit 5</u> and incorporated by reference.

22.     Amur did not have knowledge of any claim or defense at the time it of the assignment to it of the EFA from PSG.

23.     Amur assigned and transferred the EFA to Hanmi Bank and its rights in the Equipment for value, as shown by the true and correct copy of the Portfolio Purchase And Security Agreement attached to this pleading as <u>Exhibit 6</u> and incorporated by reference.

## **<u>Necessity for Relief</u>**

24.     Debtor defaulted on, breached and repudiated the EFA by failing to pay the sums as thereby required, and failed to cure its payment default and insurance default.

25.     Debtor defaulted on the EFA by commencing the above-named bankruptcy case.

26.     Upon information and belief, Debtor is insolvent, which is an event of default under the EFA.

27.     Hanmi Bank is without adequate protection in regard to the Equipment so long as it is prevented by the automatic stay from taking action to recover the Equipment.

28.     Debtor has failed to provide adequate protection for the Equipment.

29.     As Debtor has not assumed the EFA, there is significant likelihood in this case that recovery and disposition of the Equipment will be the only recovery for Hanmi Bank in regard to the EFA.

30.     As of June 22, 2022, the unpaid remining balance owed on the EFA is $53,000.00.

31.     As of June 22, 2022, 50 monthly installments payable under the EFA remain payable under the EFA.

32.     As of June 22, 2022, Debtor has paid the monthly installments payable under the EFA only

through May 15, 2022.

33.    As of June 22, 2022, Debtor has not paid the monthly installment payable udert her EFA which was due by June 15, 2022.

34.    Even in the event the EFA is assumed and payments are made to Hanmi Bank, the automatic stay should be modified so as to enable Hanmi Bank to exercise remedies to recover the Equipment and apply the net disposition proceeds to satisfy the balance owed.

## **Prayer**

Movant requests that:

1.    a time be fixed within which Debtor must apply to the Court for permission either to assume or reject the Lease;

2.    pending the assumption or rejection of the Lease, Debtor be ordered under Section 365(d)(3) of the Bankruptcy Code to pay Movant all sums due and which would become due under the Lease;

3.    in the event Debtor fails to apply to the Court for permission to assume or reject the Lease within the time fixed by the Court or pay Movant the sums due under the Lease, the Debtor be ordered to immediately return or surrender the Equipment to Movant;

4.    it be granted such other and further relief, special or general, legal or equitable, to which it may be entitled.

Respectfully submitted,

_____
Paul H. Cross
Texas Bar No. 05131500
PAUL H. CROSS ATTORNEY AT LAW PLLC
11300 N. Central Expwy., Suite 604
Dallas, Texas 75243
Telephone:    214.926.5734
Facsimile:    214.269.1439
Email:   phclease@msn.com

COUNSEL FOR HANMI BANK

## Certificate of Conference

Hanmi Bank's undersigned attorney certifies that on June 22, 2022, he conferred with Debtor's bankruptcy counsel regarding the merits of the foregoing motion, and that such counsel stated that the debtors would not agree the motion because counsel asserted that such motion is not necessary.



_____
Paul H. Cross

## Certificate of Service

The undersigned certifies that on June 22, 2022 a true and correct copy of the foregoing document into motion was served via ECF; except for Debtor whereas in that instance such document was mailed via First Class United States Mail:

Darian L. Hampton DDS PA
3610 North Josey Lane, Suite 104
Carrollton, Texas 75007
Debtor

United States Trustee
1100 Commerce St Room 976
Dallas TX 75242

And all those receiving ECF notification in this case.

_____
Paul H. Cross

# EXHIBITS

**EXHIBIT 1**      **EQUIPMENT FINANCE AGREEMENT**

**EXHIBIT 2**      **ADDENDUM TO EQUIPMENT FINANCE AGREEMENT**

**EXHIBIT 3**      **UCC-1 FINANCE AGREEMENT**

**EXHIBIT 4**      **INVOICE AND PAYMENT CONFIRMATION FOR THE EQUIPMENT**

**EXHIBIT 5**      **BROKER ASSIGNMENT**

**EXHIBIT 6**      **PORTFOLIO PURCHASE AND SECURITY AGREEMENT**

# EXHIBIT 1

### EQUIPMENT FINANCE AGREEMENT

**Partners**
CAPITAL GROUP

## EQUIPMENT FINANCE AGREEMENT

Agreement Number #: 67445                                      Federal Tax ID #: 84-3817804

This document was written in "Plain English". The words YOU and YOUR refer to the DEBTOR. The words WE, US and OUR refer to the Creditor. Every attempt has been made to eliminate confusing language and create a simple, easy-to-read document.

### DEBTOR INFORMATION

| Darian L. Hampton, DDS, P.A. | | The Hampton's Family & Cosmetic Dentistry | | |
|---|---|---|---|---|
| FULL LEGAL NAME OF CUSTOMER | | DBA | | |
| 3610 N Josey Lane Ste 104 | Carrollton | TX | 75007-3150 | 9723710747 |
| STREET ADDRESS | CITY | STATE | ZIP | PHONE |

EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE)

### SUPPLIER INFORMATION

| Kenali Inc. | DBA: Kenali Dental Equipment and Supplies | 11712 Moorpark Street Suite 204 | |
|---|---|---|---|
| NAME OF SUPPLIER | | STREET ADDRESS | |
| Studio City | CA | 91604-2158 | 8669253625 |
| CITY | STATE | ZIP | PHONE |

### See Schedule 'A' attached hereto & made a part hereof

| TERM | PAYMENT AMOUNT | ADVANCE PAYMENT |
|---|---|---|
| Term in months: **60** | **60** Payments of **$1,060.00** | **$0.00** Received |
| | | Applied to 1ˢᵗ Monthly Payment due with any remainder applied to the last payment(s) due. |

Commencement Date:_____

Payment Period is Monthly Unless Otherwise Indicated.
Payments are due on the first day of each Payment Period

### THIS IS A NONCANCELABLE/IRREVOCABLE AGREEMENT, THIS AGREEMENT CANNOT BE CANCELLED OR TERMINATED.

| CREDITOR ACCEPTANCE | DEBTOR ACCEPTANCE |
|---|---|
| DATED: 7/28/2021 | DATED: 7/26/2021 |
| CREDITOR: Partners Capital Group, Inc. | DEBTOR: Darian L. Hampton, DDS, P.A. DBA The Hampton's Family & Cosmetic Dentistry |
| SIGNATURE: *Thank N Pham* | SIGNATURE: *Darian Hampton* |
| TITLE: VP — Funding & Documentation | NAME: Darian Hampton TITLE: Managing Member |

### ACCEPTANCE OF DELIVERY

You certify that all the Equipment listed on Schedule A hereto has been furnished, is satisfactory, and that the delivery and installation have been fully completed and are satisfactory. Further, all conditions and terms of this Agreement have been reviewed and acknowledged. Upon your signing below, your promises herein will be irrevocable and unconditional in all respects. You hereby direct us to pay your supplier on your behalf with the proceeds of this financing.

Darian L. Hampton, DDS, P.A.
DBA The Hampton's Family &
Cosmetic Dentistry

*Darian Hampton* Darian Hampton, Managing Member

| Date of Delivery | Customer | Signature      Name, Title |
|---|---|---|

### GUARANTEE

As additional inducement and in consideration for us to enter into the Agreement with Debtor, the undersigned Guarantor(s), jointly and severally, unconditionally personally guarantee to Creditor, its successors and assigns, the prompt payment when due and all other Debtor's obligations to Creditor under the Agreement. The undersigned Guarantor(s) waive notice and acceptance hereof and all other notices or demand of any kind to which the undersigned Guarantor(s) may be entitled to. The undersigned Guarantor(s) waives all suretyship defenses and all claims against Debtor that arise from the existence or performance of the undersigned(s)' obligations under this Guarantee, including but not limited to, subrogation, reimbursement, contribution, or indemnity. The undersigned Guarantor(s) agree that Creditor may make other arrangements including compromise or settlement with the Debtor and the undersigned Guarantor(s) waive all defenses and notice of those changes and will remain responsible for the payment and obligations of this Agreement. Creditor does not have to notify the undersigned Guarantor(s) if the Debtor is in default. Upon any default by Debtor under this Agreement, the liabilities and obligations of the undersigned Guarantor(s) shall become forthwith due and payable to Creditor without demand or notice of any nature, all of which are expressly waived by the undersigned Guarantor(s). If it is necessary for Creditor to proceed legally to enforce this Guarantee, the undersigned Guarantor(s) expressly consent to the personal jurisdiction of the courts set out in paragraph 15 and agree to pay all costs, including attorney's fees incurred in any enforcement of this Guarantee. It is not necessary for Creditor to proceed first against Debtor or the Equipment or enforce any other remedy before proceeding against the undersigned Guarantor(s) in enforcing this Guarantee. By signing this Guarantee, the undersigned Guarantor(s) authorize Creditor, its successors and assigns, to obtain credit bureau reports for credit and collection purposes. **You waive the right to trial by jury for any claim or action arising out of or relating to the Agreement or the Equipment**

*Darian Hampton*                                                   7/26/2021

| Signature | Darian Hampton | Date |
|---|---|---|

**TERMS AND CONDITIONS**

**1. FINANCE AGREEMENT:** We have agreed to finance your purchase of the personal property described on the Schedule "A" and as modified by supplements to this Agreement from time to time signed by you and us (such property and any upgrades, replacements, and additions referred to as "Equipment") for business purposes only. You agree to all of the terms and conditions contained in this Agreement and any supplement, which together are a complete statement of our Agreement regarding the listed Equipment ("Agreement") and supersedes any purchase order, proposal, signed agreement or outstanding invoice. This Agreement may be modified only by written agreement and not by course of performance. This Agreement becomes valid upon execution by us and will begin on the commencement date shown and will continue from the first day of the following month after the commencement date, for the number of consecutive months shown. Monthly payments are due on the 1st or such other date of the month as stated herein or communicated by us to you. You also agree to pay to us interim payment. Interim payment shall be an interest-only amount equal to 1/30th of the monthly payment, multiplied by the number of days between the commencement date and the first day of the following month. If any provision of this Agreement is declared unenforceable in any jurisdiction, the other provisions herein shall remain in full force and effect in that jurisdiction and all others. This Agreement shall be construed so that interest, the applicable interest rate, fees and other charges shall not exceed the maximum time price differential, rate, interest or amount allowed by applicable law, and any excess payment will be applied first to prepay principal hereunder and then as a refund to you. You acknowledge that the interest rate applicable to the financing provided by us under this Agreement is readily calculable from the terms and conditions of this Agreement and is hereby so stated in such amount; and you represent that, directly and/or through your its accountants, attorneys, and other advisors you have the capability to accurately perform such calculation, and that you have had an ample opportunity to perform such calculation before your execution hereof. THE PAYMENT AMOUNT SHALL BE ADJUSTED PROPORTIONALLY UPWARD OR DOWNWARD AS MUCH AS 10% TO ACCOMMODATE ANY CHANGES IN THE COST OF THE EQUIPMENT. In addition, if you elect to finance applicable taxes on your purchase of the Equipment and such amount is not already included in the cost of the Equipment stated above, the cost of the Equipment and the payment amount shall be adjusted proportionately upward. You authorize us to amend this Agreement without notice to correct obvious errors. Your payments calculated herein are based on the amount financed by Us for the Equipment may include volume discount, rebate or other cost reduction by the manufacturer or vendor that is an inducement to Us to extend credit to You under the Agreement and will not result in a reduction of Your payments or a change in your obligations under the Agreement.

**2. PAYMENT:** Payments will be payable pursuant to terms as described on page 1 of this Agreement, or as effectively modified or amended by the parties in writing or as provided herein, each in the amount of the payment amounts shown (or as modified or amended). We will have the right to apply all sums, received from you, to any amounts due and owed to us under the terms of this Agreement. If for any reason, any check is returned for nonpayment, a $15.00 bad check charge will be assessed. In the event this Agreement is not commenced, any advances paid by you to us will be retained by us and deemed earned to compensate us for our documentation, processing and other expenses. All payments and other obligations under this Agreement are absolute and unconditional and shall not be subject to any reduction setoff or defense including any malfunction, defect or inability to use the Equipment and/or financed software. YOUR OBLIGATION TO PAY AND ALL OTHER OBLIGATIONS HEREIN ARE ABSOLUTE AND UNCONDITIONAL AND ARE NOT SUBJECT TO ANY ABATEMENT, SET-OFF, DEFENSE OR COUNTERCLAIM FOR ANY REASON WHATSOEVER.

**3. COMPUTER SOFTWARE:** Not withstanding any other terms and conditions of the Agreement, you agree that as to software only: a) We have not had, do not have, nor will have any title to such software, b) You have executed or will execute a separate software license agreement and we are not a party to and have no responsibilities whatsoever in regards to such license agreement.

**4. OWNERSHIP OF EQUIPMENT:** You are the owner of the Equipment and agree to keep the Equipment free and clear of all liens and claims, you will keep the Equipment in good condition, ordinary wear and tear excepted and in accordance with all policies of insurance and all applicable laws.

**5. WARRANTY DISCLAIMER:** WE MAKE NO WARRANTY, EXPRESS OR IMPLIED, THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE. You agree that you have selected the supplier and each item of equipment based upon your own judgment and disclaim any reliance upon any statements or representations made by us or any supplier. We do not take responsibility for the installation or performance of the Equipment. The supplier is not an agent of ours and nothing the supplier states can affect your obligation under this Agreement. We have no responsibility for any complaint of nonperformance against supplier. Your only remedy for breach of any such warranty or service Agreement shall be against the supplier or manufacturer of the Equipment and not against us. If there is a breach of a warranty or service agreement, it will have no effect whatsoever on the rights and obligations of you and us under this Agreement. We are not responsible for any consequential, special, or indirect damages relating to this Agreement or any Equipment.

**6. LOCATION AND USE OF EQUIPMENT:** You will keep and use the Equipment only at the Equipment location shown above and agree not to move it without our prior written consent. You will permit Us or Our agent (or Our Assignee or an agent of Our Assignee), during normal business hours, to inspect the Equipment.

**7. LOSS OR DAMAGE:** You are responsible for the risk of loss or for any destruction of or damage to the Equipment. No such loss or damage relieves you from the payment or other obligations under this Agreement. You agree to promptly notify us in writing of any loss or damage and you will then pay to us the total of all the currently outstanding payments and amounts, plus all future unpaid payments for the full term, discounted to present value at three and a half percent (3.5%) per year. Any proceeds of insurance will be paid to us and credited, at our option, against any loss or damage.

**8. COLLATERAL PROTECTION AND INSURANCE:** You agree to keep the Equipment insured against physical loss or damage, including from fire, wind, theft and accidental damage, for an amount not less than its full replacement cost, with an insurer and under terms acceptable to us, which names us and/or our assigns as additional interest on a lender's loss payable endorsement. You shall require insurer to include a clause in the policy which prohibits cancellation or modification of the policy for any reason without insurer first giving the Creditor thirty (30) days' written notice of intent to cancel. Evidence of such insurance must be provided to us or our agent within 30 days of funding and thereafter upon our written request. If you fail to timely provide such evidence to us, we may, but are not obligated to, purchase the required insurance to protect our interests in the Equipment which will not name you as an insured and may not fully protect your interests ("Equipment Insurance"). **If we procure Equipment Insurance, you agree to pay us a monthly Insurance Charge that will include premium, interest, fees and profit to us and our agents for such Equipment Insurance.** Any insurance proceeds received from Equipment Insurance will be applied, at our option, to repair or replace the Equipment, or pay off your remaining payment obligations due and to become due under this Agreement. You further agree to arbitrate any dispute with us or our agents regarding Equipment Insurance or Insurance Charges under the rules of the American Arbitration Association in the County of Orange,CA; provided however, such agreement does not authorize class arbitration. We are not a seller of insurance nor in the insurance business.

**9. INDEMNITY:** We are not responsible for any loss or injuries caused by the installation or use of the Equipment. You agree to hold us harmless and reimburse us, our agents, successors, and/or assigns, for loss, expense (including attorneys' fees and costs), and to defend and indemnify us, our agents, successors and/or assigns, against all claims, suits, liability, loss or damage arising from or related to the Equipment or this Agreement (and not just loss), including, without limitation, those relating to the Equipment's use, benefit, operation, manufacture, purchase, ownership, financing, possession, maintenance, delivery, return, or sale.

**10. TAXES AND FEES:** You agree to pay when due all taxes (including personal property tax, fines and penalties) and fees relating to this Agreement or the Equipment. If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your behalf. In addition, you also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs and expenses involved in documenting and servicing this transaction.

**11. ASSIGNMENT:** YOU HAVE NO RIGHT TO SELL, TRANSFER, OR ASSIGN THE EQUIPMENT OR THIS AGREEMENT, OR TO RENT OR LICENSE THE EQUIPMENT OUT. You understand that we, without prior notice, have the right to assign this Agreement without your consent to such assignment. You understand that our assignee will have the same rights and benefits but they do not have to perform any of our obligations. You agree that the rights of assignee will not be subject to any claims, defenses, or setoffs that you may have against us.

| | | |
|---|---|---|
| *Darian Hampton* | Darian Hampton, Managing Member | 7/26/2021 |
| Signature | Name, Title | Date |

**12. DEFAULT AND REMEDIES:** If you do not pay any payment (either sum owed to us under this Agreement or any other agreement) or any other amount due under any agreement with any other party when due or if you breach this Agreement or any other Agreement with us, you will be in default. If any part of a payment is late, you agree to pay a late charge of 15% of the payment which is late or if less, the maximum charge allowed by law. If you are ever in default, we may retain your security deposit and at our option, we can terminate or cancel this Agreement and require that you pay the total of all unpaid payments for the full term of this Agreement (future payments discounted at 3.5% per annum). We may recover interest on any unpaid balance at the rate of 8% per annum. We may also use any of the remedies available to us under Article 9 of the Uniform Commercial Code as enacted in the State of California or any other law, including without limitation the right to dispose of the Equipment at public or private sale, and we agree that you or your nominee may be the purchaser at any such sale and that the proceeds of any such sale may be applied to or on account of your obligations due hereunder and in such order as we may elect (any notice of sale or other disposition of the Equipment required by applicable law shall be deemed reasonable if mailed at least ten (10) days before such sale or other disposition to the address last shown on your records). If we refer this Agreement to an attorney for collection, you agree to pay our reasonable attorney's fees and actual court costs. Upon our repossession or receipt of the Equipment, you agree to pay the cost of repossession, storage, necessary repair, and subsequent sale of the Equipment. The net proceeds of the sale of any repossessed Equipment will be credited against what you owe us under this Agreement, and you will remain liable for any deficiency. YOU AGREE THAT WE WILL NOT BE RESPONSIBLE TO PAY YOU ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES FOR ANY DEFAULT BY US UNDER THIS AGREEMENT. You agree that any delay or failure to enforce our rights under this Agreement does not prevent us from enforcing any rights at a later time. It is further agreed that your rights and remedies are governed exclusively by this Agreement and you waive your rights under Article 9 of the UCC. If your delinquency requires additional collection efforts, a charge will be assessed in accordance with our collection charge schedule.

**13. UCC FILINGS:** To secure your payment and performance under this Agreement, you grant a security interest in the Equipment to us and you authorize us to record a UCC-1 financing statement or similar instrument, and appoint us your attorney-in-fact to prepare, execute, and deliver such instrument, in order to show our interest in the Equipment. At the termination of this Agreement, you agree to reimburse us for the cost to release our UCC interest in the Equipment.

**14. SECURITY DEPOSIT:** The security deposit is payable upon execution, may be comingled with our other funds, will be non-interest bearing, and is to secure your performance under this Agreement. Any security deposit made may be applied by us to satisfy any amount owed by you, in which event you will promptly restore the security deposit to its full amount as set forth above. If all conditions herein are fully complied with and provided you have not ever been in default of this Agreement per paragraph 12, any remaining security deposit will be refunded to you.

**15. LAW:** This Agreement shall be deemed fully executed and performed in the State of California or in the home state of whoever holds our interest as it may be assigned from time to time per paragraph 11. This Agreement shall be governed by and construed in accordance with the laws of the State of California or the laws of the home state of our successors and assignee. You expressly and unconditionally consent to the jurisdiction and court in the State of California, County of Orange or the home state of our successors and assignee or whoever holds the Creditor's interest as it may be assigned from time to time per paragraph 11, AND YOU WAIVE THE RIGHT TO TRIAL BY JURY FOR ANY CLAIM OR ACTION ARISING OUT OF OR RELATING TO THE AGREEMENT OR THE EQUIPMENT. Furthermore, you waive the defense of Forum Non Conveniens. We shall have the option of commencing an action in any court having jurisdiction over the subject matter and parties to the transaction.

**16. ACH:** You hereby authorize and request us and our assigns to initiate electronic debit entries via automated clearing house with our financial institution, and you will authorize your bank to honor the debit entries initiated by us. This authority pertains to any amounts due under this Agreement and any related ancillary documentation and if and when this authority is confirmed in a separate written instrument prepared by us and executed by you the confirmation shall thereby be incorporated herein.

**17. BORROWER GUARANTY:** You agree to submit the original Agreement documents with the advance amount due to us or our assignee via overnight courier the same day of the electronic copy of the documents. Should we fail to receive these originals, you agree to be bound by the signed electronic copy of this Agreement. You waive the right to challenge in court the authenticity of an electronic copy of this Agreement and the Electronic copy shall be considered an original for evidentiary purposes and shall be the binding agreement for the purposes of any enforcement action under paragraph 12. The person signing this Agreement for the Debtor is are authorized to bind the Debtor to the obligations set forth in this Agreement. This Agreement and any document pertaining to this Agreement may be executed in counterparts and the electronic transmission of such document shall have the same force and effect as delivery of an original.

**18. COMMERCIAL RISK:** Debtor bears all risk that the Equipment may become unusable for any reason and no inability to use Equipment whatsoever shall result in the termination of this Agreement or relieve Debtor or Guarantor(s) from any of your/its/their obligations hereunder or relating hereto.

**19. AGENCY:** Debtor acknowledges that neither the supplier nor any salesman, employee, representative or agent of the supplier, vendor or any finder, broker, or employee or agent of any finder or broker is an agent or representative of Creditor, and that none of the above is authorized to waive, alter or add any term, provision or condition of this Agreement or make any representation with respect to this Agreement. In executing this Agreement, Debtor has relied solely upon the terms, provision, conditions, and obligations contained herein.

**20. MISCELLANEOUS:** This Agreement and any document pertaining to this Agreement may be executed in counterparts and the electronic transmission of such documents shall have the same force and effect as delivery of the original and may be used in lieu of an original for all purposes. This Agreement (which includes any schedules or other documents attached hereto or otherwise stated to be incorporated herein, and any contemporaneously or subsequently executed addendums or amendments hereto) supersedes any previous documents, emails, quotes both verbal and written, and constitute the entire agreement between the parties hereto with respect to the financing of the Equipment. For purposes of perfection of a security interest in this Agreement under the Uniform Commercial Code ("UCC") or transfer of the rights of Creditor under this Agreement, to the extent that the Creditor maintains the Agreement as electronic chattel paper, the single authoritative copy of the record maintained in compliance with UCC 9-105 will constitute chattel paper. The counterpart containing Debtor's original signature and marked "Original" by Creditor will be the sole counterpart constituting chattel paper. To the extent this Agreement is chattel paper, no security interest may be created or perfected and assignment effective except through control of the authoritative copy, if any, or possession of the Original. This Agreement constitutes the entire agreement between the parties concerning the subject matter hereof and incorporates all representations made in connection with negotiation of the same. The terms hereof may not be terminated, amended, supplemented or modified orally, but only by a written instrument. In case any provision in the Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby and such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability. This Agreement may be executed, communicated, and retained electronically and a facsimile or other electronic version shall be admissible. Customer agrees to furnish Creditor with its quarterly and certified or audited annual financial statements prepared in accordance with generally accepted accounting principles and accurately presenting Customer's financial position as of the dates given.

**21. USPA Disclosure.** To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means to you: When you open an account, we will ask you for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

DocuSigned by:

Darian Hampton

Signature: F1484F14F0...

Darian Hampton, Managing Member

7/26/2021

Name, Title

Date

Agreement #: 67445

# Schedule 'A'

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the Equipment subject to the Finance Agreement. By signing below, I, the debtor, acknowledge that I chose to finance the Equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in Finance Agreement # 67445, which is the governing document to this Agreement regardless of the price and terms (if any) indicated on the invoice(s). An electronic version of this document shall be considered an original.

Kenali Inc. DBA Kenali Dental Equipment and Supplies
11712 Moorpark Street Suite 204
Studio City CA  91604-2158

Equipment Description:

| | |
|---|---|
| 1 | Sirona Cerec Milling Unit |

**DEBTOR:**
**Darian L. Hampton, DDS, P.A. DBA The Hampton's Family & Cosmetic Dentistry**

**CREDITOR:**
**Partners Capital Group, Inc.**

by: *Darian Hampton*
Darian Hampton, Managing Member
Date: 7/26/2021

by: *Thanh N Pham*
Authorized Representative
Date: 7/28/2021

# EXHIBIT 2

**ADDENDUM TO EQUIPMENT FINANCE AGREEMENT**

**Partners**
CAPITAL GROUP

1035659/332231

**COVID-19 Addendum
to Equipment Finance Agreement # 67445 ("EFA")**

This Addendum is dated as of ___7/26/2021___ and is between Darian L. Hampton, DDS, P.A. DBA The Hampton's Family & Cosmetic Dentistry ("Customer) and Partners Capital Group, Inc. ("Creditor")

Customer hereby certifies the following:

Initial Each Item

| | |
|---|---|
| DH **X** | There has been no material adverse change in the Customer's financial condition, operations, or cash flow caused by the economic disruption of the COVID-19 pandemic or other factors related thereto, which would impact the Customer's ability to meet all payment obligations, or satisfy any of the representations, warranties, and covenants made by the Customer in the EFA. |
| DH **X** | Upon commencement of the EFA, you acknowledge that you cannot terminate or cancel this EFA for any reason and you have an unconditional obligation to make all payments due under this EFA. |
| DH **X** | The Customer waives any potential right it may have to any form of payment modification, suspension of payments, or payment restructuring unless otherwise agreed upon by Lender. |
| DH **X** | If the Vehicle Registration or any other related paperwork cannot be completed due to the COVID-19 pandemic or any other reason, you acknowledge that you cannot terminate or cancel this EFA for any reason and you have an unconditional obligation to make all payments due under this EFA. |

All other terms and conditions of the EFA remain in effect.

**Darian L. Hampton, DDS, P.A. DBA The Hampton's Family & Cosmetic Dentistry**

Authorized Signature: _Darian Hampton_
—7B580F1484F14F0...

Name: Darian Hampton

Title: Managing Member

Date: 7/26/2021

Terms of Amendment agreed to by:

**Partners Capital Group, Inc.**

Authorized Signature: _Thanh N Pham_
—52FAA7149B1E428...

Name: Thanh N Pham

Title: VP - Funding & Documentation

Date: 7/28/2021

# EXHIBIT 3

**UCC-1 FINANCE AGREEMENT**

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**Lien Solutions**
Representation of filing

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141 |

**This filing is Completed**
File Number : 00210032066595
File Date  : 28-Jul-2021

| B. E-MAIL CONTACT AT FILER (optional) |
| uccfilingreturn@wolterskluwer.com |

C. SEND ACKNOWLEDGMENT TO: (Name and Address)   19312 - PARTNERS

Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

81682207

TXTX

File with: Secretary of State, TX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Darian L. Hampton, DDS, P.A. | | | | | |
| OR | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 3610 N Josey Lane Ste 104 | Carrollton | | TX | 75007 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |
| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Partners Capital Group, Inc. | | | | | |
| OR | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 201 Sandpointe Ave Suite 500 | Santa Ana | | CA | 92707 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All equipment and other personal property, including but not limited to furniture, fixtures and equipment subject to that certain Lease/Equipment Financing
Misc items on invoice 232196 dated 7/26/21
Agreement Number #  67445 dated 7/26/21, between Secured Party as Lessor/Creditor and Debtor as Lessee/Debtor, and subject to any and all existing and future schedule entered into pursuant to and incorporating said Agreement, together with all accessories, parts, attachments and appurtenances appertaining or attached to any of the Equipment, and all substitutions, trade-ins, proceeds, renewals and replacements of, and improvements and accessions to the Lease/Equipment Financing agreement Number 67445.

1 - Sirona Cerec Milling Unit Serial 232196

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

| 8. OPTIONAL FILER REFERENCE DATA: | |
|---|---|
| 81682207          67445/OID295965 | 67445/OID295965 |

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

Darian L. Hampton, DDS, P.A.

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

11. ☒ ADDITIONAL SECURED PARTY'S NAME   or   ☐ ASSIGNOR SECURED PARTY'S NAME:  Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

Amur Equipment Finance, Inc.

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 304 W. 3rd St. | Grand Island | NE | 68801 | USA |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS: 81682207-TX-0   19312 - PARTNERS CAPITAL GRO   Partners Capital Group, Inc.   File with: Secretary of State, TX   67445/OID295965   67445/OID295965

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# EXHIBIT 4

**INVOICE AND PAYMENT CONFIRMATION FOR THE EQUIPMENT**



# Invoice

## KENALI INC
### DENTAL EQUIPMENT AND SUPPLIES

11712 Moorpark Street STE 204
Studio City, CA 91604
Tel: 866-925-3625
Fax: 866-929-4739

DATE    July 26, 2021
Invoice No. 21915

Bill To
Darian Hampton DDS
Darian L Hampton DDS P.A.
3610 N. Josey Lane STE 104
Carrollton TX 75007

Ship To
Darian Hampton DDS
Darian L Hampton DDS P.A.
3610 N. Josey Lane STE 104
Carrollton TX 75007

| QTY | SERIAL # | DESCRIPTION | UNIT PRICE | Disc % | LINE TOTAL |
|---|---|---|---|---|---|
| 1.00 | 232196 | Sirona Cerec Milling Unit | $ 47,995.00 | | $ 47,995.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL DISCOUNT | | |
| | | | SUBTOTAL | | $ 47,995.00 |
| | | | SALES TAX | | |
| | | | TOTAL | | $ 47,995.00 |


PACIFIC
MERCANTILE
BANK

# Payment Confirmation

The CCD Payment request below has been transmitted successfully.

## Template Information

| | |
|---|---|
| Template Name: | Kenali, Inc |
| Request Type: | CCD Payment |
| Company Name/ID: | Partners Capital / 3554959523 |
| Template Description: | Payment |
| Debit Account: | Partners Capital Group, Inc. - Checking - *9523 |
| Effective Date: | 07/30/2021 |
| Transmit Status: | Transmitted |
| Confirmation Number: | 3218649572 |
| Status: | Transmitted |

## Credit/Destination Accounts

| ABA/TRC | Account | Account Type | Name | Detail ID | Amount |
|---|---|---|---|---|---|
| 122000247 | *5270 | Checking | Kenali, Inc | 67445 | $47,995.00 |
| Additional information:<br>Final; Inv. 21915; Darian Hampton DDS #67445 | | | | | |
| | | | | Total: | $47,995.00 |

## Approval History Information

Approval Status : 1 of 1 Received

| Action | User ID | Date |
|---|---|---|
| Enter Request | MMORENO | 07/29/2021 07:47:22 PM (ET) |
| Approve/Transmit Request | MMORENO | 07/29/2021 07:47:22 PM (ET) |

# EXHIBIT 5

**BROKER ASSIGNMENT**

DocuSign Envelope ID: 896CF534D454C-4575-8CB3-C084BA0745B4

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian



# BROKER ASSIGNMENT

| | |
|---|---|
| Obligor | Darian L. Hampton, DDS, P.A. |
| Contract Number | 1035659 |
| Purchase Price | $51,703.58 |
| Assigned Term: | 59 Months |
| Next Payment Due to Amur: | September 15, 2021 |

THIS BROKER ASSIGNMENT (the **Assignment**) is entered into as of **07/30/2021** by and between Partners Capital Group, Inc., a  Corporation located at 201 E Sandpointe Suite 500, Santa Ana CA 92707 (the **Broker**) and **Amur Equipment Finance, Inc.**, a Nebraska Corporation (**Amur**).

WHEREAS Broker and Amur are parties to that certain Broker Agreement dated as of **08/21/2020** (together with any addendum or amendment, the **Broker Agreement**: capitalized terms used herein without definition shall have the meaning ascribed thereto in the Broker Agreement), pursuant to which Amur agreed to review and consider Applications provided by Broker;

WHEREAS Amur has reviewed and approved the Application with respect to the Obligor referenced above; and

WHEREAS Broker desires to assign to Amur, and Amur agrees to receive, all rights but none of the obligations of Broker under that certain Contract referenced by the above Contract Number between Broker and Obligor (together with any contract entered into in connection therewith, including any guaranty, amendment, credit enhancement, supplement or other related document, the **Assigned Contracts**), including (a) all of Broker's rights, title, interest and remedies in any contractual payment obligation of the Obligor, any guarantor of Obligor's obligations under the Assigned Contract and/or any other obligor under the Assigned Contracts, including, without limitation, late fees, contractual penalties or any other similar contingent contractual payment obligation, but excluding any purchase or similar option exercisable at the discretion of the Obligor to the extent not included in the Purchase Price, (b) any ownership and/or security interest, as applicable, in the equipment acquired or leased by such Obligor pursuant to such Assigned Contracts, other than any interest in any residual value of or interest in such equipment to the extent not reflected in the Purchase Price (the **Equipment**), together with any security deposit, cash pledge or reserve: (c) any purchase agreement, order, bills of sale, warranties or other agreements with the vendor of the Equipment, together with all warranties with respect to Equipment and any software licenses and (d) any proceeds of the foregoing, including any insurance or other casualty proceeds (collectively, together with the Assigned Contracts, the **Assigned Interests**).

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.  **Assignment and Assumption**
    Effective as of the date hereof, Broker hereby irrevocably and unconditionally assigns, sells and transfers to Amur the Assigned Interests in exchange for payment of the Purchase Price referenced above.  Broker hereby waives and releases any right, title or interest that it may have (whether pursuant to a "cross-collateralization" provision or otherwise) in and to any of the Assigned Interests.  Broker acknowledges that Amur has not assumed and shall not be bound to perform any duty or obligation of Broker under the Assigned Contracts, which Broker shall be and remain responsible for and liable to perform.

2.  **Representations, Warranties and Agreements**
    With respect to the Assigned Contracts, Broker hereby (x) represents and warrants to Amur that each of the representations and warranties contained on the Schedule of Representations, Warranties and Agreements attached hereto (the **Schedule**) is true and correct as of the date hereof and (y) covenants with Amur and otherwise agrees and acknowledges to perform each obligation and provision contained on the Schedule.  Broker acknowledges that Amur is relying on the accuracy of the representations and warranties contained herein, on the Schedule and in the Broker Agreement in entering into this Assignment and Broker agrees that the obligations of Broker described in Section 13 of the Broker Agreement shall be binding to it as though included herein *mutatis mutandis*.

3.  **Security Interest**
    This Assignment is intended to be a complete and present assignment of all of the Assigned Interests and not a financing or collateral assignment.  However, on a precautionary basis, to secure the obligations of Obligor and Broker, Broker hereby grants to Amur a first priority perfected lien and security interest (the **Security Interest**) in the Assigned Interests.  If and only if Obligor has indefeasibly paid to Amur all the Payments and other monies payable under the Assigned Contracts, Amur shall, at the request of Broker, release its Security Interest and execute any other document as may be reasonably requested by Broker to evidence such release.

4.  **Rights of Amur**

DocuSign Envelope ID: 896F8789965b3713-8CB3-C084BA07459A

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

BROKER ASSIGNMENT
Partners Capital Group, Inc.

Until such time as Amur has received payments in full of all amounts described in the Assigned Contracts, Amur shall have and enjoy (a) all of the rights of a secured party under the Uniform Commercial Code in the Equipment and (b) the rights of Broker under the Assigned Contracts, which it shall exercise without notice to, or consent from, Broker.

Without limiting the generality of the foregoing, Amur shall have the right to:

(a)   Collect, compromise and release any and all monies payable under the Assigned Contracts;
(b)   Modify, amend or otherwise deal with the Assigned Contracts, any related documents and the Assigned Interests in such a manner as Broker could have in the absence of this Assignment and at such times as Amur shall, in its sole discretion, deem advisable; and
(c)   Take all legal or other proceedings which Broker could have taken with respect to the Assigned Contracts and related documents, including, without limitation the enforcement of rights and remedies under the Assigned Contracts following an event of default by the Obligor thereunder.

No exercise of the foregoing rights by Amur shall relieve Broker of its obligation to perform its obligations under the Assigned Contracts or its indemnification obligations to Amur set forth in the Broker Agreement or hereunder.  Broker shall authorize and irrevocably direct the Obligor to make all payments and other sums due from time to time under the Assigned Contracts to or at the direction of Amur and hereby agrees that Amur may, at its sole discretion, send to any Obligor a notice that its payment obligations have been assigned from Broker to Amur at any time.

5.   Indemnification by Broker
Broker hereby confirms that the provisions of Section 15 of the Broker Agreement remain fully effective and binding on it and shall apply *mutatis mutandis* to this Assignment as though incorporated herein.  Broker shall indemnify, defend and hold harmless Amur from any taxes (other than ordinary income taxes of Amur), costs, fees, or expenses incurred by Amur as a result of the assignment of the Assigned Interests, whenever asserted, imposed or levied.

6.   Transfer
To facilitate the assignment provided for hereunder, Broker hereby (i) grants to Amur the right to endorse in its name or in the name of Broker, and to deposit in any account under Amur's name, all checks and drafts for payment made by Obligor, any guarantor or any other obligor under the Assigned Contracts, (ii) agrees to hold in trust and turn over to Amur immediately any monies received from the Obligor, any guarantor and/or other obligor of the Assigned Contracts, (iii) agrees to take such further action at its expense to effectuate the assignment of its rights in the Assigned Interests as may be requested by Amur from time to time, (iv) authorizes Amur to execute and file all financing statements, title applications, registrations and any other documents Amur deems necessary or convenient to accomplish or evidence the transfer of the Assigned Interests   and irrevocably grants to Amur a power of attorney, coupled with an interest, as Broker's true and lawful attorney, to sign Broker's name in order to accomplish any of the foregoing .

7.   Successors and Assigns
Broker shall not assign, delegate or transfer any of its rights or responsibilities under this Assignment, which shall be binding upon it and inure to the benefit of Amur and its successors and assigns.  Amur shall be allowed to sell, transfer, assign or otherwise convey to any assignee any of its interests in the Assigned Interests, as assigned to it hereunder, without notice to, or consent from, Broker.

8.   Execution
This Assignment may be executed in separate counterparts which together shall constitute one and the same instrument. This Assignment may be signed electronically or digitally and all signatures transmitted by facsimile, email, digital photograph or other electronic means shall for all purposes be deemed effective, binding, legally admissible and have the same effect as a manually applied ink signature.

| BROKER | Partners Capital Group, Inc. | AMUR EQUIPMENT FINANCE, INC. | |
|---|---|---|---|
| Signature | DocuSigned by: | Signature | DocuSigned by: *Whitnee Yager* |
| | 1EEDABFA76784DD... | | FAA72BGA268D408... |
| Name | Thanh Pham | Name | Whitnee Yager |
| Title | Vice President of Funding | Title | Funding Manager |

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

BROKER ASSIGNMENT
**Partners Capital Group, Inc.**

## Schedule of Representations, Warranties and Agreements

(1) All taxes payable in connection with the Assigned Contracts and delivery of the Equipment have been properly and indefeasibly paid in full.

(2) All of the Assigned Contracts and any other documents entered into by Broker, Obligor and any other party thereto in connection with the Assigned Contracts (i) have been entered into on the forms supplied to Broker by Amur in connection with the Discounting Addendum executed by Amur and Broker and have not been modified by Broker in any way or (ii) conform in full, without modification, to the form contracts of Broker reviewed and approved by Amur prior to the date hereof.

(3) All of the Equipment has been delivered to the address stated in the Assigned Contracts and has been unconditionally accepted by the relevant Obligor.

(4) The Purchase Price does not include any payment to be made to the Obligor at the end of the term of the Assigned Contracts for the purchase of the Equipment or any other obligation.

(5) Broker has delivered, or immediately following the purchase by Amur shall deliver, to Amur the chattel paper counterpart of the Assigned Contracts (which shall include electronic chattel where appropriate), which Broker understands, represents and warrants is the only counterpart qualifying as chattel paper, and Broker shall deliver true and correct copies of all other Assigned Contracts and closing documents required by Amur.

(6) Broker has not sold or assigned any right, title or interest in the Assigned Contracts or Equipment to any person and owns good and marketable to both the Assigned Contracts and the Equipment, or, in the case of an Assigned Contracts that is a loan or financing, owns good and marketable to the Assigned Contracts and a first priority security interest in the Equipment, in all cases free of liens, encumbrances or any other rights of third parties.

(7) No event of default or event that with notice, lapse of time or both would be an event of default has occurred under the Assigned Contracts and none of the parties to the Assigned Contracts is insolvent.

(8) No rent or other amount has been prepaid on any Assigned Contracts and Broker is holding no security deposit, or other credit support not delivered to Amur.

(9) Broker shall provide, on reasonable notice, access to Amur to inspect all of Broker's books and records regarding the Assigned Contracts.

(10) Each representation and warranty made by Broker to Amur in the Broker Agreement is true and correct as of the date hereof and shall not be read to limit any representation or warranty herein or vice versa.

# EXHIBIT 6

**PORTFOLIO PURCHASE AND SECURITY AGREEMENT**

**PORTFOLIO PURCHASE AND SECURITY AGREEMENT**

**(NON-RECOURSE)**

THIS PORTFOLIO PURCHASE AND SECURITY AGREEMENT (this "Agreement"), dated as of October 22, 2021, is entered into by and between Amur Equipment Finance, Inc., a Nebraska corporation ("SELLER"), with its chief executive offices located at 304 West 3rd Street, Grand Island, NE 68801, and Hanmi Bank ("PURCHASER"), with its chief executive office or principal place of business located at 2010 Main Street, Suite 590, Irvine, CA 92614.  This Agreement is one of the Purchase and Security Agreements referred to and described in, and intended to be governed by the terms and conditions of, that certain Program Agreement (the "Program Agreement") dated May 26, 2016 by and between SELLER and PURCHASER, including all amendments or modifications thereto, which terms and conditions are hereby incorporated in and made a part of this Agreement to the same extent as if fully set forth herein. All capitalized terms used in this Agreement without definition shall have the meanings set forth in the Program Agreement.

In consideration of the mutual agreements contained herein and in the Program Agreement, the parties hereto agree as follows:

(1)     Purchase and Sale of Portfolio.  SELLER hereby sells, transfers, assigns, and conveys to PURCHASER, absolutely and not as security, all of SELLER's right, title, and interest in and to the Portfolio consisting of all the Contracts described in Exhibit A attached hereto and by this reference incorporated herein and the Payment Streams due thereunder. PURCHASER and SELLER intend that the transaction evidenced by this Agreement be an absolute sale of the Portfolio to PURCHASER, and do not intend the transaction to be an assignment for security purposes.  If, notwithstanding the foregoing, the conveyance of the Portfolio to PURCHASER hereunder is determined to be a pledge or transfer for security purposes, the parties intend that SELLER shall be deemed hereunder to have granted to PURCHASER a first priority perfected security interest in all of SELLER's right, title, and interest in any of the Contracts described in Exhibit A and the Payment Streams due thereunder as security for the prompt and satisfactory performance of all obligations of SELLER to PURCHASER hereunder and under the Program Agreement with respect to the Contracts described in Exhibit A, and that this Agreement shall constitute a security agreement under applicable law.  With respect to the filing of any UCC financing statements which may be made in connection with the sale, assignment, and transfer herein contemplated, such filing shall in no way be construed as being contrary to the intent of the parties that this transaction be treated as a sale to PURCHASER of all right, title and interest in and to the Contracts and the Payment Streams due thereunder.

(2)     Security for Performance.  As security for the prompt and satisfactory performance of all obligations of SELLER to PURCHASER hereunder and under the Program Agreement with respect to the Contracts described in Exhibit A, and the obligations of each Obligor under its Contract and related Contract Documents, SELLER hereby grants to PURCHASER a security interest in all of SELLER's right, title, and interest in and to the following property (the "Collateral") consisting of (i) the Contracts listed in Exhibit A and all Contract Documents; (ii) all Payments and all other amounts payable hereafter in connection with each Contract by the

respective Obligor to SELLER (if the Contract is a lease, Payments also include amounts payable pursuant to any purchase option or obligation under the lease (including without limitation any PUTS or One Dollar Outs)) including amounts payable pursuant to any Obligor Guaranty of the Contract; (iii) the Equipment described in each Contract listed in Exhibit A and all replacements thereof, substitutions therefore, and modifications, upgrades, and accessions thereto along with all collateral set forth in any Contract Documents including, but not limited to personal property, real property and Guaranties thereof; (iv) all Deferred Payments; (v) all broker agreements relating to any of the Contracts; and (vi) all proceeds of any of the foregoing, including proceeds of insurance. SELLER hereby authorizes PURCHASER to file one or more financing or continuation statements, and amendments thereto, relating to all or any part of the Collateral without the signature of SELLER where permitted by law.

(3)     SELLER Representations and Warranties.  SELLER hereby represents, warrants, and agrees as follows:

(i)     Each Contract listed in Exhibit A is and will continue to be an Eligible Contract in accordance with Section 6 of the Program Agreement.

(ii)     As of the date of execution of each Contract listed in Exhibit A, and as of the date of this Agreement, each representation and warranty made by SELLER in Section 5 of the Program Agreement was and is true and correct.

(iii)     SELLER has delivered, or will contemporaneously herewith deliver, to PURCHASER the sole original counterpart of each Contract listed in Exhibit A.

(iv)     SELLER will comply with the covenants made by SELLER in Section 7 of the Program Agreement with respect to each Contract listed in Exhibit A.

(4)     Performance of Contracts.  Nothing contained in this Agreement shall relieve SELLER from or cause PURCHASER to be liable for, the obligations of SELLER under any Contract or related Contract Documents.  All Payments paid after the date hereof are to be made by the Obligor and remitted to PURCHASER in accordance with the provisions of the Program Agreement.

(5)     Rights of Obligor.  Notwithstanding any other provision of this Agreement, PURCHASER agrees that certain of its security interest and rights hereunder are subject to the rights of each Obligor under its related Contract and, so long as any Obligor shall not be in default under its Contract, PURCHASER shall not disturb such Obligor's peaceful possession of the related Equipment and such Obligor's right to use such Equipment for its intended purposes.

(6)     Governing Law; Severability; Notice.  This Agreement shall be a contract made under, governed by, and construed in all respects in accordance with the laws of the State of California.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be consistent with the terms of the Program Agreement, and effective and valid under applicable law.  If any provision of this Agreement shall be prohibited by or invalid under any law, such provision shall be ineffective only to the extent and duration of such prohibition or invalidity,

without invalidating the remainder of such provision or the remaining provisions of this Agreement. If any provision of this Agreement is inconsistent with the terms of the Program Agreement, the terms of the Program Agreement shall control. Any notice required or given hereunder shall be in writing and shall be given in accordance with Section 10.2 of the Program Agreement.

(7)     Waivers. SELLER hereby waives presentment, demand for performance, notice of nonperformance, protest, notice of protest, notice of dishonor, and notice of acceptance of this Agreement.

(8)     Successors and Assigns. This Agreement shall be binding upon, and shall inure to the benefit of, the successors and assigns of SELLER and PURCHASER, provided, however, that SELLER may not assign its obligations under any Contract or under this Agreement, and any assignment in violation of this Section 8 shall be void and unenforceable.

(9)     Miscellaneous. The provisions of the Program Agreement set forth in Sections 10.1-10.18 are specifically incorporated herein by this reference as if they were set forth in full herein.

(10)    NON-RECOURSE TO SELLER. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, EACH SALE OF A PORTFOLIO TO PURCHASER IS WITHOUT RECOURSE, EXCEPT AS STATED IN THE AGREEMENT.

IN WITNESS WHEREOF, SELLER and PURCHASER have duly executed and delivered this Agreement as of the date first above written.

**PURCHASER:**                                    **SELLER:**

HANMI BANK                                        AMUR EQUIPMENT FINANCE, INC.

By: *Michael Coon*                                By: _____
Michael Coon (Oct 21, 2021 14:54 EDT)

Title: FVP-Portfolio Manager                      Title: VP Data Analytics and Syndication

Schedule "A" – Customers, Agreements #s, Payments, Purchase Price

Page 1 of 1



| Lease # | Lessee Name | Original Term | Remaining Term | Remaining Receivables | Purchase Price (PV) |
|---|---|---|---|---|---|
| 1035659 | Darian L. Hampton, DDS, P.A. | 59 | 57 | 60,420.00 | 54,125.99 |

Initials: _____ XA _____ ,    _MGC_
MGC

**AMUR EQUIPMENT FINANCE, INC.**

By: _____

Title: VP Data Analytics and Syndication

Date: _____


State of Nebraska          )
County of                  )
HALL

Subscribed and sworn to before me this 21st day of October _____, 2021

Notary Public

GENERAL NOTARY - State of Nebraska
TERESA CRAWFORD
My Comm. Exp. May 3, 2023