Paul H. Cross
Texas Bar No. 05131500
PAUL H. CROSS ATTORNEY AT LAW PLLC
11300 N. Central Expwy., Suite 604
Dallas, Texas 75243
Telephone:     214.926.5734
Facsimile:     214.269.1439
Email:   phclease@msn.com

ATTORNEY FOR HANMI BANK

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | § | CASE NO. 24-70089 |
| | § | |
| HIGH PLAINS RADIO NETWORK, LLC, | § | |
| | § | |
| DEBTOR | § | CHAPTER 11, Subchapter V |

### HANMI BANK'S FIRST AMENDED MOTION TO COMPEL ASSUMPTION
### OR REJECTION OF EQUIPMENT FINANCE AGREEMENTS

Hanmi Bank ("Movant") moves for entry of an order compelling High Plains Radio Network, LLC

("Debtor") to assume or reject two equipment finance agreements, and in support respectfully shows:

### Notice Under Local Bankruptcy Rules

**NO HEARING WILL BE CONDUCED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 12A24 EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, DALLAS, TEXAS 75242-1496 BEFORE 4:00 O'CLOCK P.M. ON APRIL 28, 2024, WHICH IS TWENTY DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK, AND A COPY MUST BE SERVED UPON THE COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN.   IF A RESPONSE IS FILED A HEARING WILL BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH MOTION OR NOTICE IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

### Introduction

1.      This motion is filed under Sections 363 and 365 of the United States Bankruptcy Code (the

"Bankruptcy Code").

2.     Hanmi Bank seeks to recover possession certain radio broadcasting transmission equipment (collectively the "Equipment") which is collateral for indebtedness under two equipment finance agreements (each an "EFA" and collectively the "EFAs").

**Background**

3.     On March 26, 2024, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

**EFA No. 40467799**

4.     Amur Equipment Finance, Inc. ("Amur") and Debtor executed and entered into an Equipment Finance Agreement ( "EFA 40467799") dated July 28, 2022 now known as Hanmi Bank Equipment Finance Agreement No. 40467799 regarding a RVR transmitter; (1) ORBAN 2200 and (468) Audio Feed Line bearing serial no. TX10KPS/G-0139, 808122-011, located at 725 FM 2013, Friona, Texas 79035.

5.     A true and correct copy of EFA 40467799 is attached to this pleading as Exhibit 1 and incorporated by reference.

6.     The Equipment was to be and was provided and supplied by Process Technologies & Services, LLC ("Supplier").

7.     The portion of the Equipment which is the subject of EFA 40467799 is described in the invoice from Supplier, attached to this pleading as Exhibit 2 and incorporated by reference.

8.     Debtor agreed under EFA 40467799 to make 60 equal successive monthly installments to Amur in the amount of $2,266.00.

9.     Bankruptcy and insolvency of Debtor are events of default under EFA 40467799.

10.     EFA 40467799 allows Amur, upon default by Debtor, to take possession of the Equipment through judicial process or extrajudicial means and to dispose of the Equipment.

11.     The indebtedness under EFA 40467799 was and is secured by a security interest granted by the Debtor in and to the Equipment.

12.     Amur perfected the security interest in the equipment which is the subject of EFA 40467799 by filing a UCC-1 financing statement with the Texas Secretary of State on December 1, 2021.

13.     A true and correct file-marked copy of the UCC-1 financing statement alleged above is attached to this pleading as <u>Exhibit 3</u> and incorporated by reference.

14.     The portion of the Equipment which is the subject of EFA 40467799 was delivered to and accepted by Debtor, as shown by the Equipment Acceptance Certificate, a true and correct copy of which is shown in <u>Exhibit 4</u> attached to this pleading and incorporated by reference signed by Debtor on December 1, 2021.

15.     Amur paid Supplier the full purchase price for the equipment which is the subject of EFA 40467799.

16.     Amur assigned EFA 40467799 to Hanmi Bank and its rights in the equipment which is the subject of EFA 40467799 for value.

17.     Hanmi Bank did not have knowledge of any claim or defense at the time of the assignment to it of EFA 40467799 from Amur.

18.     Hanmi Bank remains the sole owner of the EFA, the security interest alleged above and all rights in the same.

**EFA No. 40478603**

19.     Hanmi Bank and Debtor executed and entered into an Equipment Finance Agreement ("EFA 40478603") dated July 28, 2022 known as Hanmi Bank Equipment Finance Agreement No. 40478603 regarding radio transmission equipment, goods, property and accessions thereto, located at 860 East 155 Road, Magnum, Oklahoma 73554.

20.     A true and correct copy of EFA 40478603 is attached to this pleading as <u>Exhibit 5</u> and incorporated by reference.

21.     The portion of the Equipment which is the subject of EFA 40467799 was to be and was provided and supplied by Supplier.

22.     The portion of the Equipment which is the subject of EFA 40467799 is described in the invoice from Supplier, attached to this pleading as <u>Exhibit 6</u> and incorporated by reference.

23.     Debtor agreed under the EFA 40478603   to make 60 equal successive monthly installments to Hanmi Bank in the amount of $2,573.44.

24.     Hanmi Bank and Debtor executed and entered into a Disbursement Authorization to EFA 40478603.

25.     Bankruptcy and insolvency of Debtor are events of default under EFA 40478603.

26.     EFA 40478603 allows Hanmi Bank, upon default by Debtor, to take possession of the subject equipment through judicial process or extrajudicial means and to dispose of the Equipment.

27.     The indebtedness under the Hanmi Bank was and is secured by a security interest granted by the Debtor in and to the equipment which is the subject of EFA 40478603.

28.     Hanmi Bank perfected the security interest in the equipment alleged above by filing a UCC-1 financing statement with the Oklahoma County Clerk on March 3, 2020.[1]

29.     A true and correct file-marked copy of the UCC-1 financing statement alleged immediately above is attached to this pleading as Exhibit 7 and incorporated by reference.

30.     The equipment which is the subject of EFA 40478603 was delivered to and accepted by Debtor, as shown by the Delivery and Acceptance Certificate shown in Exhibit 8, signed by Debtor on February 25, 2022.

31.     Hanmi Bank paid Supplier the full purchase price for equipment which is the subject of EFA 40478603.

32.     Hanmi Bank remains the sole owner of EFA 40478603, the security interest alleged above and all rights in the same.

---

[1]     Under Oklahoma law, UCC-1 financing statements are to be filed with the Oklahoma County, Oklahoma Clerk. 12A OK STAT. ANN. tit. 12-A § 1-9-320.3 (2023).

**Necessity for Relief**

33.    Debtor defaulted on, breached and repudiated EFA 40467799 by failing to pay the sums as thereby required, and failed to cure its payment default.

34.    Debtor defaulted on, breached and repudiated EFA 40478603 by failing to pay the sums as thereby required, and failed to cure its payment default.

35.    Debtor defaulted on both of the EFAs by commencing the above-named bankruptcy case.

36.    Upon information and belief, Debtor is insolvent, which is an event of default under both of the EFAs.

37.    Hanmi Bank is without adequate protection in regard to the Equipment so long as it is prevented by the automatic stay from taking action to recover the Equipment.

38.    Debtor has failed to provide adequate protection for the Equipment which is the subject of EFA 40467799.

39.    Debtor's representative and member, Monte Lee Spearman, testified in this Court on April 5, 2024 that Debtor is not conducting broadcasting operations at its place of business at or near Friona, Texas.

40.    Debtor's representative and member, Monte Lee Spearman, testified in this Court on April 5, 2024 that Debtor is not using the portion of the Equipment which is the subject of EFA 40467799.

41.    Because Debtor is not using the portion of the Equipment which is the subject of EFA 40467799, there is no reason for Debtor to retain possession.

42.    Debtor has failed to provide adequate protection for the Equipment which is the subject of EFA 40478603.

43.    Debtor's representative and member, Monte Lee Spearman, testified in this Court on April 5, 2024 that Debtor is currently conducting broadcasting operations at its place of business at or near Magnum, Oklahoma.

44.    Debtor's representative and member, Monte Lee Spearman, testified in this Court on April 5, 2024 that Debtor is currently the portion of the Equipment which is the subject of EFA 40478603.

45.    As Debtor has not assumed either of the EFAs, there is significant likelihood in this case

that recovery and disposition of the Equipment will be the only recovery for Hanmi Bank in regard to the EFAs.

46.    As of April 8, 2024, the unpaid remining balance owed on EFA 40467799 is $53,000.00.

47.    As of April 8, 2024, 33 monthly installments payable under EFA 40467799 remain payable under the EFA.

48.    As of April 8, 2024, Debtor has paid the monthly installments payable under EFA 40467799 only through February 1, 2024.

49.    As of April 8, 2024, Debtor has not paid the monthly installment payable udert her EFA which was due by March 1, 2024.

50.    As of April 8, 2024, the unpaid remining balance owed on EFA 40478603 is $74,550.40.

51.    As of April 8, 2024, 37 monthly installments payable under the EFA remain payable under EFA 40478603.

52.    As of April 8, 2024, Debtor has paid the monthly installments payable under EFA 40478603 only through February 1, 2024.

53.    As of April 8, 2024, Debtor has not paid the monthly installment payable under EFA 40478603 which was due by March 1, 2024.

54.    As of April 3, 2024, the unpaid remining balance owed on EFA 40478603  is $95,217.28.

54.    Debtor should be ordered and compelled to assume or reject each of the EFAs within a date certain to allow Hanmi Bank to proceed with other appropriate remedies.

### Prayer

Movant requests that:

1.    a time be fixed within which Debtor must apply to the Court for permission either to assume or reject the EFAs;

2.    pending the assumption or rejection of the Lease, Debtor be ordered under Section 365(d)(3) of the Bankruptcy Code to pay Hanmi Bank all sums due and which would become due under the EFAs;

3.    in the event Debtor fails to apply to the Court for permission to assume or reject the Lease within the time fixed by the Court or pay Movant the sums due under the Lease, the Debtor be ordered to immediately return or surrender the Equipment to Movant;

4.      it be granted such other and further relief, special or general, legal or equitable, to which it
may be entitled.

Respectfully submitted,

_____
Paul H. Cross
Texas Bar No. 05131500
PAUL H. CROSS ATTORNEY AT LAW PLLC
11300 N. Central Expwy., Suite 604
Dallas, Texas 75243
Telephone:    214.926.5734
Facsimile:    214.269.1439
Email:   phclease@msn.com

COUNSEL FOR HANMI BANK

**Certificate of Conference**

Hanmi Bank's undersigned attorney certifies that on April 6, 2024, he attempted to confer with Debtor's bankruptcy counsel regarding the merits of the foregoing motion, and that the latter counsel failed to state Debtor's position in regard to the same.

_____
Paul H. Cross

**Certificate of Service**

The undersigned certifies that on April 9, 2024 a true and correct copy of the foregoing motion was served via ECF; except for Debtor whereas in that instance such document was mailed via First Class United States Mail:

High Plains Radio Network, LLC                     U S Small Business Administration
c/o Monte Lee Spearman, Member                10737 Gateway West   Ste 300
P.O. Box 1419                                              El Paso Texas 79935
Vernon, Texas 76384
Debtor                                                        And all those receiving ECF
                                                               notification in this case.
United States Trustee
1100 Commerce St Room 976
Dallas Texas 75242

_____
Paul H. Cross

# EXHIBITS

### FOR

### HANMI BANK'S INITIAL MOTIONS AND ANY RELATED DECLARATION AND DISCOVERY REQUESTS

**EXHIBIT 1**    **EQUIPMENT FINANCE AGREEMENT NO. 40467799**

**EXHIBIT 2**    **INVOICE FROM SUPPLIER FOR EQUIPMENT FINANCE AGREEMENT NO. 40467799**

**EXHIBIT 3**    **FILE-MARKED UCC-1 FINANCING STATEMENT FOR EQUIPMENT FINANCE AGREEMENT NO. 40467799 FILED WITH TEXAS SECRETARY OF STATE**

**EXHIBIT 4**    **EQUIPMENT ACCEPTANCE CERTIFICATE FOR EQUIPMENT FINANCE AGREEMENT NO. 40467799**

**EXHIBIT 5**    **EQUIPMENT FINANCE AGREEMENT NO. 40478603**

**EXHIBIT 6**    **INVOICE FROM SUPPLIER FOR EQUIPMENT FINANCE AGREEMENT NO. 40478603**

**EXHIBIT 7**    **FILE-MARKED COPY OF THE UCC-1 FINANCING STATEMENT FILED WITH OKLAHOMA COUNTY CLERK FOR EQUIPMENT FINANCE AGREEMENT NO. 40478603**

**EXHIBIT 8**    **DELIVERY AND ACCEPTANCE CERTIFICATE FOR EQUIPMENT FINANCE AGREEMENT NO. 40478603**

# EXHIBIT 1

### EQUIPMENT FINANCE AGREEMENT NO. 40467799

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

| Customer No. | Contract No. |
|---|---|
| 367468 | 1053897 |

# EQUIPMENT FINANCE AGREEMENT

| **Customer** (also **you** or **your**) | High Plains Radio Network, L.L.C. | **Address** | PO Box 1478, Plainview, TX 79073 |
|---|---|---|---|

**Amur Equipment Finance, Inc.** (**Secured Party**, also **we**, **us** or **our**) agrees to provide to you the Financed Amount subject to the terms and conditions of this EFA.

**1. Key Definitions**

| Financed Amount | Term | Required Initial Payment | Periodic Payment | Payment Frequency | Balloon Payment | Security Deposit |
|---|---|---|---|---|---|---|
| $101,716.00 | 60 Months | $2,266.00 | $2,266.00 | Monthly | N/A | N/A |

**EFA** means this equipment finance agreement and all schedules, exhibits, addendums and amendments thereto (also referred to as **Contract**).

**Contract Documents** refer to this EFA and all agreements and documents related thereto (excluding any Guaranty) described as Contract Documents and identified by the above Contract Number.

**Obligations** means all your payment and performance obligations under this EFA and all other Contract Documents.

**Equipment** means the equipment and/or personal property financed hereunder by us and described in **Schedule A**.

**Collateral** means the Equipment and any additional collateral pledged to us to secure the Obligations as described in **Schedule A**.

**Guaranty** means any written guaranty of your Obligations hereunder; **Guarantor** refers to any person or entity that signs a Guaranty.

**Funding** means any portion of the Financed Amount we pay to a designated vendor or reimburse to you.

**Payment Due Date** means, throughout the entire Term, the same numeric day of each month as we will advise you.

**2. Term.** The Term shall commence on the first Payment Due Date. However, your Obligations and our rights hereunder shall begin the day we execute this Contract, which shall remain in full force and effect, together with all Contract Documents, until you have completely and indefeasibly discharged all Obligations.

**3. Unconditional and Non-Cancelable Obligations.** YOUR PAYMENT AND ALL OTHER OBLIGATIONS UNDER ALL CONTRACT DOCUMENTS ARE ABSOLUTE, UNCONDITIONAL AND IRREVOCABLE AND NOT SUBJECT TO ABATEMENT, REDUCTION, SET-OFF, CLAIM, OR DEFENSE FOR ANY REASON WHATSOEVER, WHETHER ARISING OUT OF ANY PAST, PRESENT OR FUTURE CLAIM AGAINST US, A VENDOR, THE COLLATERAL, ANY THIRD PARTY, A CASUALTY OR EVENT BEYOND YOUR CONTROL. YOU CANNOT CANCEL OR TERMINATE THIS EFA OR ANY OTHER CONTRACT DOCUMENT FOR ANY REASON.

**4. Disclaimer of Warranties.** You acknowledge and agree that: (i) you selected the Equipment, accept it AS IS and WE MAKE NO EXPRESS OR IMPLIED WARRANTIES WHATSOEVER AS TO ITS MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE; (ii) you acknowledge and agree that you selected any software included with the Collateral (the **Software**), you assume all liability related to any unauthorized access or use of the Software and any data collected, stored or used by it (the **Data**) and we do not own or license any Software or Data nor have any duty to configure, maintain and/or otherwise safeguard them: (iii) YOU WAIVE AGAINST US, AND WE SHALL NOT BE LIABLE FOR, ANY CLAIM FOR LOSS, INJURY OR DAMAGE CAUSED BY ANY COLLATERAL AND/OR CONTRACT DOCUMENT, INCLUDING BUT NOT LIMITED TO, ALL SPECIAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE OR EXEMPLARY DAMAGES: (iv) you shall look only to the vendor or manufacturer (not us) for any claim related to Equipment or Software, which shall not relieve you or any Guarantor from any respective obligations hereunder.

**5. Security Interest.** To secure your performance of the Obligations, you grant us a first priority security interest in the Collateral (the **Security Interest**). Failure to perfect our Security Interest in any Collateral shall not affect or impair your Obligations or those of any Guarantor. You have (or will have upon acquisition of the Equipment) good and marketable title to the Collateral and shall maintain such title until all your Obligations have been satisfied. You shall not sell, transfer, lease, assign, relinquish possession of or otherwise dispose of the Collateral, which is and must remain free and clear of any security interest, lien or encumbrance of any kind (except our Security Interest) and be under your control at all times. You shall give us immediate notice of any unpermitted liens, claims or encumbrances and cause them to be immediately and irrevocably removed at your expense. You shall title and/or register any eligible Collateral as directed by us.

**6. Payment Obligations**

(a) You promise to pay to us in good and immediately available funds, with or without notice or demand, all the amounts listed herein (each, a **Payment**).

(i) The Required Initial Payment, any Security Deposit and the Transaction Fees (all as disclosed in the **Document Package Checklist**) prior to us advancing any Funding. If we choose not to execute this EFA for any reason, we will return any Required Initial Payment, Security Deposit and title fees not incurred but keep the balance as liquidated damages.

(ii) Throughout the Term at the Payment Frequency, each Periodic Payment on the applicable Payment Due Date.

(iii) At the end of the Term, the Balloon Payment, if any.

(iv) A **Per Diem** amount, which shall constitute interest on the Financed Amount and be calculated as 1/30th of the highest Periodic Payment amount for each day between the last Funding and the first Payment Due Date.

(v) All costs and expenses, whether incurred by us, counsel and/or agents, related to the Contract Documents, such as due diligence, documentation, searches and inspection costs, as well as fees and expenses to establish, perfect, protect or enforce our rights, interests and remedies, irrespective of whether you or any Guarantor is in default of any obligation to us.

(vi) Any other amounts due under this EFA or any other Contract Document.

(b) We shall apply all Payments in our sole discretion to satisfy the Obligations and disregard any restrictive endorsement.

(c) You authorize us to increase any applicable Payment by up to 15% or decrease them without limit to reflect a corresponding change in the Financed Amount; any such increase or decrease will be reflected in our billings to you.

(d) You agree to pay: (a) for each Payment we do not receive in full within ten (10) days of its due date, a late charge equal to the greater of (i) 10% of such late Payment and (ii) a minimum amount determined by our then-applicable fee policy; (b) for each returned ACH debit charge or check, a fee determined by our then-applicable fee policy.

**7. Security Deposit.** We may commingle any Security Deposit with our assets and apply it to any Obligation at our sole discretion, after which you agree to replenish it. Any unused portion will be remitted to you, without interest, upon full performance of the Obligations.

**8. Collateral Condition, Maintenance and Inspection**

(a) YOU SHALL USE THE COLLATERAL FOR BUSINESS PURPOSES ONLY.

(b) You shall keep at all times the Collateral at the location(s) specified on Schedule A or as otherwise disclosed to us, except you may move any mobile Collateral within the U.S. in your normal course of business provided it returns to such location(s) on a regular basis.

(c) You are responsible for properly installing, operating, maintaining, repairing and registering the Collateral and for keeping it in the same condition as when delivered to you, except for ordinary wear and tear. You shall not alter the Collateral without our prior written consent nor make it part of any real property. Any addition or improvement to the Collateral shall be deemed a permanent accession thereto subject to our Security Interest.

(d) Upon our written request, you shall prominently label the Collateral as being subject to our Security Interest.

(e) We may inspect the Collateral and related documentation at any reasonable time.

**9. Insurance and Risk of Loss**

(a) You shall keep the Collateral insured against loss and liability under terms and with insurers acceptable to us (the **Required Coverage**) and agree to have us named as lender's loss payee and additional insured. Upon demand, you agree to provide us with valid evidence of the Required Coverage.

(b) If you fail to maintain the Required Coverage (and without us waiving any resulting default), we have the right to purchase, at your expense, insurance to protect our interests, in which case you acknowledge and agree that we are not a reseller of insurance and the amount we bill you may be higher than what your insurance provider could have charged you and include a profit for us as well billing and processing fees.

(c) You shall bear the entire risk of loss, theft, damage, destruction or requisition (each, a Casualty) of the Collateral from any cause whatsoever. You shall promptly notify us in writing of any Casualty and follow our directive by either (i) placing the affected Collateral in its pre-Casualty condition at your sole cost and expense or (ii) paying all remaining Obligations, less any Casualty proceeds received by us.

**10. Taxes.** You are required to report and pay when due all personal property taxes on the Collateral. You are required to pay when due all other taxes, fees, assessments, interest, penalties and other governmental charges arising hereunder, including, without limitation, all other personal property, excise, use, sales and gross receipts taxes (excluding our income taxes), plus user fees, tolls and fines (collectively, the **Taxes**), even if we may, in our sole discretion, elect to pay any Taxes directly to the appropriate taxing authority on your behalf, in which case you agree to promptly reimburse us that cost.

**11. Representations and Other Agreements**

(a) You are and shall remain (i) duly organized, validly existing and in good standing under the laws of the state of your organization and are and (ii) duly qualified and licensed to do business wherever necessary.

(b) You shall give us at least thirty (30) days' prior written notice before you change your name, mailing address or place of business.

(c) You have adequate power and capacity to enter into this EFA and all other Contract Documents, which have been duly authorized, executed and delivered by, and constitute valid, legal and binding agreements enforceable against, you.

(d) Except as previously set forth in writing to us, you do not require a governmental or other approval to enter into the Contract Documents and your execution thereof does not violate any judgment, regulation or law.

(e) All information you furnish to us is true, complete, correct and not misleading.

(f) You are not party to any legal proceeding and agree to comply with all Federal, state and local laws and regulations.

**12. Default.** Any of the following shall constitute a Default under this EFA:

(a) We do not receive any one Payment as and when required hereunder.

(b) You breach or fail to perform any obligation, provision and/or condition of this EFA or any other Contract Document.

(c) You or any Guarantor shall default under any other financial obligation or real property lease.

(d) You or any Guarantor shall have made an untrue or misleading statement or representation.

(e) You or any Guarantor takes any action to: (i) cease, suspend or wind up its respective business; (ii) terminate its existence (or if an individual, he or she dies or is adjudicated as incompetent); and/or (iii) transfer any portion of its ownership to, merge with or convey or dispose of substantially all of its assets to, any person or entity (each, a **Dissolution Event**).

(f) You or any Guarantor (i) becomes insolvent; (ii) takes any action under (or is involuntarily placed in) any bankruptcy, reorganization, insolvency, receivership or other similar proceedings for the relief of debtors or benefit of creditors; and/or (iii) makes an assignment for the benefit of creditors or admits its inability to pay its debts as they become due (each, an **Insolvency Event**).

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

**AMUR** Equipment Finance

Contract No.
**1053897**

**13. Remedies.** Upon the occurrence of a Default, we can elect to declare you in default of this EFA and any other Contract Document and, subject to applicable law, exercise cumulatively any or all of the following remedies without notice to you or any Guarantor:

(a) Require that you pay us the sum of the following amounts (collectively, the **Accelerated Amount**) calculated as of the date of your Default:

(i) All accrued and unpaid Periodic Payments;

(ii) The present value of all remaining Periodic Payments and any Balloon Payment, all accelerated and discounted at an annual percentage rate equal to 2.50% plus the Treasury Constant Maturities rate (from the Federal Reserve Board H.15 *Selected Interest Rates* release) with the term closest to, but not longer than, the remaining Term of this EFA:

(iii) All other Payments due hereunder;

(iv) All of our Enforcement Costs (as defined below); and

(v) A daily default interest equal to the lower of (1) an 18.00% annual percentage rate and (2) the highest amount allowed by law, applied to all sums due hereunder until paid to us.

(b) Demand turnover of the Collateral, which you shall immediately do at your expense as directed by us while preserving it in a marketable condition.

(c) Enter any premises where the Collateral is located to inspect, render unusable or take immediate possession of it, with or without demand, notice, court order or other process of law and without liability to us. In this case, you irrevocably waive to the fullest extent permitted by law any bond, surety or security required as an incident of such action.

(d) Sell, lease or otherwise dispose of the Collateral at a public or private sale, with minimum ten (10) days' notice.

(e) Pursue one or more remedy available to us under any Contract Document, any Guaranty, the Uniform Commercial Code (the **UCC**), any other applicable law and/or in equity.

As material inducement for us to enter into this EFA, you expressly agree that the Accelerated Amount (i) represents a reasonable estimate of the anticipated harm we will suffer from a Default, such harm being difficult to ascertain accurately due to the variability of our operating, financing and other costs and (ii) compensates us for the loss of our bargain, including all costs, expenses and fees arising from such Default.

**14. Enforcement Costs.** Whether or not you or any Guarantor are in default and/or in bankruptcy, you shall be obligated to pay us all Enforcement Costs, which represent all attorney's fees, other legal fees as well as all costs and expenses we incur, in the exercise or preservation of our rights or remedies and/or our efforts to enforce judgments, under this EFA, any Contract Documents or Guaranty, including all expenses related to the turnover, recovery, repossession, preservation, refurbishing, advertising, sale, re-lease or other disposition of any Collateral.

**15. Assignment**

(a) You may not assign, delegate or transfer any of your rights or responsibilities under any Contract Document, which shall remain binding upon you, your heirs, successors and assigns.

(b) We may sell, transfer, assign or otherwise convey to any affiliated or unaffiliated person or entity (an **Assignee**), without notice to you or your consent, any or all of our rights, interests and benefits (in whole or in part) under this EFA (including Payments due hereunder), any other Contract Document, a Guaranty or the Collateral (an **Assignment**). Upon any Assignment you acknowledge that: (i) such Assignee shall have the rights, interests and benefits we convey, but none of our obligations under any assigned Contract Documents; (ii) such Assignee's rights shall not be subject to any claim, defense or set-off that you or any Guarantor may have against us; (iii) you shall perform all the Obligations hereunder for the Assignee as required under such Assignment: and (iv) if requested, you shall (and cause all Guarantors to) acknowledge such Assignment.

**16. Indemnification.** You agree to indemnify, defend and hold us, any Assignee and our respective agents, employees, directors, officers and shareholders, harmless (on a net after-tax basis) from and against any suits, claims, losses, damages, Taxes or other harms suffered (including but not limited to all attorney's fees incurred and other Enforcement Costs) relating to this EFA, any other Contract Documents, Guaranty or Collateral and/or unauthorized access to Software or Data.

**17. Choice of Law and Service of Process.** THIS EFA AND EACH OTHER CONTRACT DOCUMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEBRASKA (WITHOUT REGARD TO ITS CONFLICT OF LAWS PRINCIPLES) REGARDLESS OF THE LOCATION OF THE COLLATERAL. YOU AGREE THAT WE HAVE THE OPTION TO CHOOSE THE VENUE, FORUM AND STATE IN WHICH WE COMMENCE ANY LEGAL ACTION OR PROCEEDING ARISING DIRECTLY OR INDIRECTLY AND/OR OTHERWISE RELATED TO THIS EFA, ANY CONTRACT DOCUMENT AND/OR THE COLLATERAL AND YOU HEREBY CONSENT TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE COURTS OF THE STATE OF NEBRASKA, HALL COUNTY OR THE U.S. DISTRICT COURT LOCATED IN THE STATE OF NEBRASKA OR,

IN THE EVENT THAT THIS EFA IS ASSIGNED BY US, ANY OTHER COURT SELECTED BY THE ASSIGNEE. HOWEVER, IF YOU COMMENCE ANY LEGAL ACTION OR PROCEEDING AGAINST US, YOU MAY ONLY DO SO IN ONE OF THE AFORESAID COURTS LOCATED IN THE STATE OF NEBRASKA. You agree that any service of process shall be sufficiently served if sent to you by a nationally recognized overnight delivery service to your current address on our records and it shall be deemed complete two (2) business days after having been sent to you.

**18. Arbitration.** Any controversy, claim or breach related to this Contract may be settled by arbitration according to the LAWS OF THE STATE OF NEBRASKA: any judgment upon the award rendered by the arbiter(s) may be entered in any court of jurisdiction. Arbitration shall be held in the State of Nebraska under the American Arbitration Association commercial arbitration rules.

**19. Waiver of Jury Trial.** EACH PARTY HEREBY IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM OR CROSS-COMPLAINT IN ANY ACTION OR PROCEEDING TO WHICH IT MAY BE A PARTY REGARDING ANY MATTER WHATSOEVER RELATED TO THIS EFA, ANY OTHER CONTRACT DOCUMENTS, GUARANTY, SOFTWARE, DATA AND/OR COLLATERAL.

**20. Miscellaneous**

(a) *Entire Agreement and Amendments.* The Contract Documents represent the entire agreement between you and us: they supersede all prior agreements and communications concerning this subject matter and may only be amended in writing by mutual consent, except you authorize us to: (i) date, complete blanks, update contact information and payments (as described above): (ii) correct any errors or omissions: and (iii) amend Schedule A.

(b) *Further Authorizations.* You authorize us to: (i) sign and file on your behalf any document we deem necessary to perfect, protect, dispose of, transfer, sell or enforce our interest in the Collateral: (ii) take any action authorized by the Contract Documents: (iii) make claims for, execute and endorse all documents and receive all payments for checks or drafts covering loss or damage: (iv) take any other action allowed under your insurance policies and (v) grant any of these powers to our agents.

(c) *Severability and Usury Savings Clause.* Any provision or remedy in the Contract Documents found to be invalid shall not impair the remaining ones. You agree that a waiver of a Default shall not represent a waiver of any other Default, and that any delay or failure to enforce our rights does not prevent us from enforcing any rights later on. Any amount we bill or collect in excess than what is allowed by law (including usury laws, if applicable) shall be deemed a mistake and we will, respectively, reduce any such excess amount to the maximum amount permitted by law or apply it against your other Obligations.

(d) *Notices.* We reserve the right to send notices, at our discretion, by personal delivery: by mail, deemed effective three (3) days after sending: or by electronic means (including emails and/or SMS messages, in which case you may incur charges from your communications service provider), deemed effective when sent.

(e) *Credit and Information Disclosure.* You confirm that upon the submission of an application on your behalf for financing to us, you and each Guarantor authorized us, and further authorize us until all your Obligations are satisfied, to obtain any credit, financial, trade and/or business information on you and any Guarantor (and you confirm that each Guarantor provided you with such authorization) from any bank, financial institution, credit reporting agency, trade reference and/or any other person or entity.

(f) *Communications and Marketing.* You and any Guarantor expressly consent to receiving communications including email, voice and text messages (including prerecorded, automated and/or artificial messages) from us, our agents and/or our Assignees, for any purpose, including but not limited to marketing or collection purposes, at any email address, residential telephone line or wireless telephone number you provide us now or in the future (in which case message and/or data rate may apply). This consent is not a condition of doing business with, or purchasing any goods/services from us. You and any Guarantor may unsubscribe or opt-out of any further telemarketing calls or marketing text messages at any time.

(g) *Survival.* All your Obligations and our rights shall survive the expiration or earlier termination of this EFA, all other Contract Documents and any Guaranty.

(h) *Further Assurances.* At your expense, you shall execute and deliver such additional documents and perform such further acts we may request to effect and preserve our Security Interest and rights under the Contract Documents. You also agree to deliver such information or documents we may request, including insurance certificates, financial statements, tax returns, equipment records, real property waivers and trade or personal banking information.

(i) *Timing.* Time is of the essence with respect to your Obligations hereunder.

(j) *Headings.* Headings are for convenience only.

**Execution and Chattel Paper.** This EFA and any related Contract Documents may be executed in counterparts manually or by electronic means and, when transmitted to us through any means (including electronic), shall be binding on you for all purposes as if manually signed. The copy of this EFA containing your original or electronic signature and (i) manually signed by us, marked "Original" and in our or any direct or indirect Assignee's possession or (ii) electronically signed by us and stored as an electronic record under our control, shall constitute the original authoritative version of such document for all purposes and shall constitute the sole "chattel paper" as defined in the UCC. **THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**

| CUSTOMER | | AMUR EQUIPMENT FINANCE, INC. | |
|---|---|---|---|
| Signature | *Monte Lee Spearman* (DocuSigned by, 34FA2DE8A8D245F...) | Signature | *McKenzie Niedfelt* (DocuSigned by, 620DD70C674B419...) |
| Name | Monte Lee Spearman | Name | McKenzie Niedfelt |
| Title | Member | Title | Senior Funding Supervisor |
| Date | 12/1/2021 | Date | 12/6/2021 |

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian



| Contract No. |
|---|
| **1053897** |

## SCHEDULE A – COLLATERAL

This **Schedule A** represents an integral part of the EFA referenced by the Contract Number above.

For the purposes of this EFA, Collateral shall refer to the following Equipment, any collateral in which we have or shall have a Security Interest, ownership and/or title under a separate agreement with the Customer, as well as any additional collateral listed below, in all cases whether now owned or hereafter acquired, together with all personal property installed in, affixed to or used in connection therewith and all present or future: (i) additions, accessories, accessions, attachments, parts, supplies, related software, intellectual property, rights, licenses and improvements thereto: (ii) substitutions, renewals, replacements and purchase options thereof: (iii) insurance, warranty, and other third-party claims: (iv) Customer's rights in connection with a third-party's use of such equipment under a sublease, rental or similar agreement: (v) proceeds and product in any form (including but not limited to insurance and sale proceeds) of each of the foregoing, whether it be cash, non-cash or in any other form; and (vi) to the extent the equipment identified herein is construed as or deemed inventory, that inventory and all accounts, accounts receivable, cash proceeds and all other proceeds related thereto or derived therefrom.

### Equipment

| Description | VIN/Serial Number | Equipment Location | Vendor |
|---|---|---|---|
| (1) RVR TRANSMITTER: (1) ORBAN 2200; (468) Audio Feed Line | TX10KPS/G-0139, 808122-011 | 725 FM 2013, Friona, TX 79035 | Process Technologies & Services, LLC |

# EXHIBIT 2

**INVOICE FROM SUPPLIER FOR EQUIPMENT FINANCE AGREEMENT NO. 40467799**



# Invoice

| Phone # |
|---|
| 704-817-5950 |

| Date | Invoice # |
|---|---|
| 11/11/2021 | 20211110E |

10612-D Providence Road, #716
Charlotte, NC 28277-0233

| Bill To | Ship To |
|---|---|
| High Plains Radio Network, LLC<br>PO Box 1478<br>Plainview, TX 79073<br>USA | HPRN<br>725 FM 2013<br>Friona, TX 79035<br>USA |

| P.O. No. | Payment | Rep | Ship Date | Ship Via | Incoterm |
|---|---|---|---|---|---|
| | Due on receipt | PV | 11/11/2021 | | |

| Item | Description | Qty | Rate(USD) | Amount |
|---|---|---|---|---|
| Equip. | RVR TRANSMITTER<br>Model #PJ10KPS-CA<br>10500W, 87.5-108 MHZ, RF Output 50 Ohm<br>SN TX10KPS/G-0139 | 1 | 78,870.00 | 78,870.00 |
| Equip. | ORBAN 2200<br>Model #2200U<br>FM audio processor, 20Hz-15kHz, Freq 2.0Hz-15kHz<br>SN 808122-011 CI | 1 | 9,850.00 | 9,850.00 |
| Equip. | Audio Feed Line - HJ8-50B<br>Andrews-Comscope<br>Air Dielectric Coaxial Cable, corr copper, 3 in, black PE jacket | 468 | 25.63 | 11,996.00 |
| Shipping Charge | Shipping | 1 | 1,000.00 | 1,000.00 |

Thank you for your business.

| | |
|---|---|
| Subtotal USD | $101,716.00 |
| Sales Tax  (0.0%) | $0.00 |
| Total USD | $101,716.00 |
| Payments/Credits | $0.00 |
| **Balance Due** | $101,716.00 |

Bank Info:
Bank of America, NC2-108-01-01
7911 Providence Road
Charlotte, NC  28277
Account#: 237005994405
Swiftcode:  BOFAUS3N
Wire Routing # 026 009 593
ACH Routing # 0530 0019 6
*Customer Must Pay Wire Tranfer Fees*

Pierre vanDongen
Cell: 704-907-6505
pierre@processtechgroup.com

Website: www.processtechgroup.com

# EXHIBIT 3

**FILE-MARKED UCC-1 FINANCING STATEMENT FOR EQUIPMENT FINANCE
AGREEMENT NO. 40467799 FILED WITH TEXAS SECRETARY OF STATE**

**UCC FINANCING STATEMENT**

**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Corporation Service Company
251 LITTLE FALLS DRIVE
Wilmington, DE 19808
USA

**FILING NUMBER:** 21-0053337519
**FILING DATE:** 12/01/2021      03:15 PM
**DOCUMENT NUMBER:** 1098419890001
**FILED: Texas Secretary of State**
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME - Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| OR | 1a. ORGANIZATION'S NAME | | | | | |
|----|-------------------------|--|--|--|--|--|
| | HIGH PLAINS RADIO NETWORK, L.L.C. | | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---------------------|------|-------|-------------|---------|
| PO Box 1478 | Plainview | TX | 79073-1478 | USA |

2. DEBTOR'S NAME - Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| OR | 2a. ORGANIZATION'S NAME | | | | | |
|----|-------------------------|--|--|--|--|--|
| | | | | | | |
| | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---------------------|------|-------|-------------|---------|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY) - Provide only one Secured Party name (3a or 3b)

| OR | 3a. ORGANIZATION'S NAME | | | | | |
|----|-------------------------|--|--|--|--|--|
| | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---------------------|------|-------|-------------|---------|
| PO BOX 2576 | Springfield | IL | 62708 | USA |
| CSCUSPREP@cscinfo.com | | | | |

4. COLLATERAL: This financing statement covers the following collateral:
(1) RVR TRANSMITTER Serial Number:TX10KPS/G-0139 (1) ORBAN 2200 Serial Number:808122-011 (468) Audio Feed Line The equipment financed under Contract 1053897 listed above, whether now owned or hereafter acquired, together with all personal property installed in, affixed to or used in connection therewith and all present or future: (i) additions, accessories, accessions, attachments, parts, supplies, related software, intellectual property, rights, licenses and improvements thereto; (ii) substitutions, renewals, replacements and purchase options thereof; (iii) insurance, warranty, and other third-party claims; (iv) Debtor's rights in connection with a third-party's use of such equipment under a sublease, rental or similar agreement; (v) proceeds and product in any form (including but not limited to insurance and sale proceeds) of each of the foregoing, whether it be cash, non-cash or in any other form; and (vi) to the extent the equipment identified herein is construed as or deemed inventory, that inventory and all accounts, accounts receivable, cash proceeds and all other proceeds related thereto or derived therefrom.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box.
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
[222610896]

**FILING OFFICE COPY**

# EXHIBIT 4

**EQUIPMENT ACCEPTANCE CERTIFICATE FOR EQUIPMENT FINANCE AGREEMENT NO. 40467799**

# EQUIPMENT ACCEPTANCE CERTIFICATE

This document (the **Acceptance Certificate**) is executed by **High Plains Radio Network, L.L.C.** (the **Customer**, also **you** or **your**) in favor of **Amur Equipment Finance, Inc.** and its successors and assigns (collectively, also **we**, **us** and **our**) and represents a Contract Document under the EFA, Lease or other financing agreement identified by the Contract Number above (the **Contract**). Any defined term not otherwise described herein shall have the same meaning ascribed to it in the Contract or the other Contract Documents defined therein.

> **As of the Acceptance Date set forth below, you (i) unconditionally and irrevocably accept the equipment listed in the attached Schedule A, together with all records, manuals and instructions (the Equipment) and (ii) agree to be responsible for, perform and comply with, all of the Obligations, terms and conditions of the Contract Documents.**

In connection with your acceptance of the Equipment, you acknowledge and agree as follows:

1. You selected the Equipment, accept it AS IS and WE MAKE NO EXPRESS OR IMPLIED WARRANTIES WHATSOEVER AS TO ITS MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE: you selected any Software included with the Equipment, you assume all liability related to any unauthorized access or use of the Software and any Data collected, stored or used by it and we do not own or license any Software or Data nor have any duty to configure, maintain and/or otherwise safeguard them; YOU WAIVE AGAINST US, AND WE SHALL NOT BE LIABLE FOR, ANY CLAIM FOR LOSS, INJURY OR DAMAGE CAUSED BY THE EQUIPMENT, SOFTWARE AND/OR DATA, INCLUDING BUT NOT LIMITED TO, ALL SPECIAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE OR EXEMPLARY DAMAGES; and you shall look only to the vendor or manufacturer (not us) for any claim related to Equipment or Software, which shall not relieve you of any Payment or other Obligation under the Contract Documents.

2. Neither the Equipment vendor nor any of its salespersons or other agents are agents of ours or authorized to waive or modify any term or condition of this document or the other Contract Documents.

3. The Equipment has not been delivered, installed and/or accepted on a trial basis.

**Execution.** This document may be signed manually or by electronic means and, when transmitted to us through any means (including electronic), shall be binding on you for all purposes as if manually signed.

| CUSTOMER | High Plains Radio Network, L.L.C. |
|---|---|
| Signature | DocuSigned by: *Monte Lee Spearman* 34FA2DE8A8D245F... |
| Name | Monte Lee Spearman |
| Title | Member |
| Acceptance Date | 12/1/2021 |

## SCHEDULE A – COLLATERAL

### Equipment

| Description | VIN/Serial Number | Equipment Location | Vendor |
|---|---|---|---|
| (1) RVR TRANSMITTER: (1) ORBAN 2200: (468) Audio Feed Line | TX10KPS/G-0139, 808122-011 | 725 FM 2013, Friona, TX 79035 | Process Technologies & Services, LLC |

# EXHIBIT 5

### EQUIPMENT FINANCE AGREEMENT NO. 40478603

THIS IS A COPY

**Hanmi Bank**

## EQUIPMENT FINANCING AGREEMENT

Agreement # 17534-DIS-50187

| "BORROWER" | "SUPPLIER" |
|---|---|
| FULL LEGAL NAME HIGH PLAINS RADIO NETWORK, L.L.C. <br> BILLING ADDRESS 3218 Quincy St <br><br> CITY Plainview STATE TX ZIP 79072-1906 <br> CONTACT Monte Lee Spearman    TELEPHONE 970-255-3615 | See Exhibit "A" Attached Hereto <br> and Made A Part Hereof |

| QUANTITY | FULL DESCRIPTION OF PROPERTY INCLUDING MODEL, SERIAL NUMBERS | EQUIPMENT COST |
|---|---|---|
|  | See Exhibit "A" Attached Hereto and Made A Part Hereof | SEE DISBURSEMENT AUTHORIZATION ATTACHED HERETO AND MADE A PART HEREOF |

| PROPERTY LOCATION (IF DIFFERS FROM BILLING ADDRESS) | FIRST PAYMENT (CHECK FOR THIS AMOUNT MUST ACCOMPANY AGREEMENT) |
|---|---|
| Street Address:  860 E 155 Road <br> City: Mangum <br> State:  OK  Zip: 73554     3/1/2022 | FIRST PAYMENT  $0.00 <br> LAST PAYMENT  $0.00 <br> LOAN FEE    $395.00 <br> TOTAL AMOUNT DUE: $395.00 |

TERM OF LOAN AND PAYMENTS         FIRST PAYMENT DATE: _____
                                  ("Base Term Commencement Date")

**60** PAYMENTS OF  $2,573.44

### TERMS OF EQUIPMENT FINANCING AGREEMENT ("Agreement")

Borrower and Secured Party agree as follows:

1.  **SECURITY INTEREST:**  Borrower hereby grants Secured Party a security under the Uniform Commercial Code in the above personal property (collectively the "Collateral" and individually an "Item" or "Item of Collateral").  Such security interest is granted to secure performance by Borrower of its obligations thereunder and under any other present or future agreement with Secured Party.  Borrower shall insure that such security interest is and shall remain a sole first lien security interest.  **BORROWER HEREBY AUTHORIZES SECURED PARTY TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS SECURED PARTY OR ITS DESIGNEE AS BORROWER'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON BORROWER'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.**

2.  **PAYMENTS:**  Borrower shall repay Secured Party the above Total of Payments in the number of monthly installments of the amount indicated above.  The initial installment payment shall be deemed due as of the Base Term Commencement Date and subsequent installment payments shall be due on the same day of each month thereafter until paid.  The Base Term Commencement Date shall be designated as the date of funding or another date selected by Borrower at the time of verbal or written verification to Secured Party.  **If Borrower selects a Base Term Commencement Date that is not the date of funding, then a pro-rata portion of the aggregated average of the installment payments based on a daily charge of one-thirtieth (1/30) of the installment payment calculated from the date of funding to Base Term Commencement Date shall be due and payable on the Base Term Commencement Date.**  All other amounts due thereunder shall be due upon Borrower's receipt of Secured Party's invoice therefor.  Advance payments shall be applied to the last installment payments in reverse order until exhausted; provided that if there is a default, any payments under this agreement may be applied to Borrower's obligations to Secured Party in such order as Secured Party chooses.

3.  **NO AGENCY.**  BORROWER ACKNOWLEDGES THAT NO SUPPLIER OF AN ITEM OR INTERMEDIARY, MANUFACTURER, DISTRIBUTOR, WHOLESALER, BROKER OR ANY OTHER PERSON OR ENTITY  NOR ANY AGENT  OF  ANY OF THE FOREGOING PERSONS OR ENTITIES (collectively "**Supplier**") IS AN AGENT OF SECURED PARTY AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT.  NO REPRESENTATION AS TO ANY MATTER BY ANY SUCH PARTY SHALL BIND SECURED PARTY OR AFFECT BORROWERS DUTY TO PAY THE INSTALLMENT PAYMENTS AND PERFORM ITS OTHER OBLIGATIONS THEREUNDER.

4.  **NON CANCELABLE AGREEMENT:**  THERE SHALL BE NO PREPAYMENT OR OFFSET TO THE TERMS OF THIS AGREEMENT AND THE PAYMENTS DUE HEREUNDER AND THIS AGREEMENT IS NON CANCELABLE BY BORROWER FOR ANY REASON WHATSOEVER.  BORROWER MAY REPAY THE INSTALLMENT PAYMENTS ONLY IN ACCORDANCE HEREWITH.

5.  **FINANCING.**  THIS AGREEMENT IS SOLELY AN EQUIPMENT FINANCING AGREEMENT.  SEE ALL PAGES FOR ADDITIONAL TERMS AND CONDITIONS WHICH ARE PART OF THIS AGREEMENT.

**SECURED PARTY MAKES NO WARRANTY, EXPRESS OR IMPLIED, OR THAT THE EQUIPMENT IS FIT FOR A PARTICULAR PURPOSE OR THAT THE EQUIPMENT IS MERCHANTABLE.**  BORROWER AGREES THAT BORROWER HAS SELECTED THE SUPPLIER AND EACH ITEM OF EQUIPMENT BASED UPON BORROWER'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY SECURED PARTY.  SECURED PARTY DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT.  THE SUPPLIER IS NOT AN AGENT OF SECURED PARTY AND NOTHING THE SUPPLIER STATES CAN AFFECT BORROWER'S OBLIGATION UNDER THE AGREEMENT.  BORROWER WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER.  This Agreement is effective only upon execution by an authorized officer of Secured Party following Borrower's execution hereof, and upon execution Secured Party shall fund the Equipment Cost/Advanced. Borrower hereby authorizes Secured Party to Disburse the Equipment Cost/Advance as indicated on the attached Disbursement Authorization.  Secured Party reserves the right to pay the applicable portion of the Equipment Cost/Advance jointly to any party not specified in the preceding sentence with a security interest in an Item of Collateral.

6.  **LOCATION; INSPECTION; USE.**  Borrower shall keep, or, as to an Item which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Borrower's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Secured Party. Upon request, Borrower shall advise Secured Party as to the exact location of an Item of Collateral.  Secured Party may inspect the Collateral during normal business hours and enter the premises where the Collateral may be located for such purposes.  Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner and in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturers' instructions and warranty requirements.

7.  **ALTERATIONS; SECURITY INTEREST COVERAGE.**  Without Secured Party's prior written consent, Borrower shall not make any alterations, additions or improvements to an Item of Collateral which detracts from its economic value or functional utility.  All additions and improvements made to an Item shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility.  Secured Party's security interest shall cover all modifications, accessions, additions to or replacements and substitutions for the Collateral.  Borrower will not make any replacements or substitutions without Secured Party's prior written consent.

8.  **MAINTENANCE.**  Borrower shall maintain the Collateral in good repair, condition and working order.  Borrower shall cause all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties.  Borrower will cause each Item of Collateral for which a service contract is generally available to be covered by a contract which provides coverage typical as to repairs of the type involved and is issued by a competent servicing entity.

9.  **LOSS AND DAMAGE; CASUALTY VALUE.**  In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Borrower shall give Secured Party prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Secured Party to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Borrower shall cause the Equipment to be replaced and shall immediately provide Secured Party with information necessary to perfect Secured Party's security interest in the replacement Equipment, or shall pay Secured Party the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future installment payment due with respect to such Item discounted at five percent (5%) per annum simple interest from the date due to the date of such payment.

10.  **TITLING.**  If requested by Secured Party, Borrower shall cause an Item of Collateral subject to title registration laws to be titled as directed by Secured Party.  Borrower shall advise Secured Party promptly as to any necessary retitling.  Borrower shall cause all documents of title to be furnished Secured Party within sixty (60) days of the date of any titling effected by Borrower.

11.  **TAXES AND FEES.**  Borrower agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees relating to this Agreement or the Collateral.  If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your behalf.  In addition, you also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs and expenses involved in documenting and servicing this transaction.  You further agree to pay us any loan fee as set forth above on the date the first payment due.  You also acknowledge that in addition to the payments required to be made hereunder, we may assess and you may be required to pay additional taxes and/or fees.  **Such fees may not only cover our costs they may also include a profit.**

12.  **INSURANCE.**  Collateral Protection and Insurance: You agree to keep the Collateral fully insured against loss with us as loss payee in an amount not less than the replacement cost until this Agreement is terminated. You also agree to obtain a general public liability insurance policy from anyone who is acceptable to us and to include us as an insured on the policy. You agree to provide us certificates binders, or other evidence of insurance acceptable to us, before this Agreement begins and within thirty (30) days thereafter provide us with the policies of insurance   Should you fail to furnish insurance as set forth herein in the type and amounts requested, we may force place insurance and then charge you the amount of the forced placed insurance plus 20% to reflect our cost of funds and administrative costs. We shall be reimbursed within ten (10) days after an invoice is sent to you in the event that we had to force place insurance.

INITIAL  _MLS_

THIS IS A COPY

13. **SECURED PARTY'S PAYMENT.** If Borrower fails to perform any of its obligations hereunder, Secured Party may perform such obligation, and Borrower shall (a) reimburse Secured Party the cost of such performance and (b) pay Secured Party the service charge contemplated in paragraph 20.

14. **INDEMNITY.** Borrower shall indemnify, defend and hold Secured Party harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Secured Party related to this Agreement and Secured Party's protection of its Collateral. While it is not anticipated that Secured Party shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

15. **DEFAULT.** Any of the following constitutes an event of default hereunder: (a) Borrower's failure to pay any amount due hereunder, within five (5) days of when due; (b) Borrower's default in performing any other obligation hereunder or under any agreement between Borrower and Secured Party; (c) death or judicial declaration of competency of Borrower, if an individual; (d) the filing by or against Borrower of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of Borrowers, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Borrower , appointment of a receiver or trustee for Borrower or for any Borrower's assets, institution by or against Borrower of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Borrower, Borrower's cessation of active business affairs or the making by Borrower of a transfer of a material portion of Borrower's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) s to a guarantor of other surety of Borrower's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Borrower; (h) Borrower's default under any loan, lease, or agreement providing financial accommodation with a third party or (i) Secured Party shall in good faith deem itself insecure as a result of a material adverse change in Borrower's financial condition or otherwise.

16. **REMEDIES.** Upon the occurrence of an event of default, Secured Party shall have the right, options, duties and remedies of a secured party, and Borrower shall have the rights and duties of a debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Secured Party may: (a) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Borrower; (b) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession or damages to contents; (c) require Borrower to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (d) upon notice to Borrower required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Secured Party's possession, at a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Borrower hereunder with Borrower remaining liable for any deficiency and with any excess being returned to Borrower or (e) utilize any other remedy available under the Uniform Commercial Code or otherwise to Secured Party. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Secured Party may if permitted by law bid and become the purchaser at any such sale. Secured Party may conduct any public or private sale from Borrower's premises or location without any charge by Borrower.

17. **LITIGATION AND OTHER EXPENSES.** Borrower shall pay Secured Party its costs and expenses not offset as provided in paragraph 16, including repossession and attorneys' fees and court costs, incurred by Secured Party in enforcing this Agreement and in protecting its Collateral whether in State, Federal or Bankruptcy Court or other judicial or non-judicial tribunal including mediation, arbitration or judicial reference proceeding. This obligation includes the payment of such amounts whether an action is filed.

18. **ASSIGNMENT.** Without the prior written consent of Secured Party, Borrower shall not sell, finance or create or allow any lien other than Secured Party's security interest against an Item of Collateral or assign any of Borrower's obligations hereunder. Borrower's obligations are not assignable by operation of law. Secured Party may assign, pledge or otherwise transfer any of its rights but none of its obligations hereunder without notice to Borrower. If Borrower is given notice of any such assignment, Borrower shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice regardless of whether Borrower acknowledges the assignment or not. The rights of an assignee to amounts due hereunder shall be free of any claims, offsets, actions or causes of action, or defense Borrower may have against Secured Party, and Borrower agrees not to assert against an assignee any claim or defense which Borrower may have against Secured Party. Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

19. **MARKINGS; PERSONAL PROPERTY.** Borrower shall mark the Collateral or its location as requested by Secured Party to indicate Secured Party's security interest. As between the parties the Collateral shall at all times be deemed personal. Borrower will provide Secured Party any real property waivers requested by Secured Party as to the real property where an Item of Collateral is or is to be located including, but not limited to, landlord's waivers and mortgagee waivers.

20. **LATE PAYMENT.** If Borrower fails to pay any amount to be paid hereunder within five (5) days of when due, Borrower will pay Secured Party (a) a late charge of 10% of the payment which is late or if less, the maximum charge allowed by law, (b) amounts Secured Party pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month.

21. **ADDITIONAL DOCUMENTS.** Borrower shall provide to Secured Party such financing statements and similar documents as Secured Party shall request. Borrower authorizes Secured Party where permitted by law to make filings of such documents without Borrower's signature. Borrower further shall furnish Secured Party (a) a fiscal year-end financial statement including balance sheet and profit and loss statement within one hundred twenty (120) days of the close of each fiscal year and (b) such other information and documents not specifically mentioned herein relative to this agreement as Secured Party may request. Borrower shall reimburse Secured Party for all search and filing fees incurred by Secured Party related hereto.

22. **NOTICES.** Notices shall be in writing, and sufficient if mailed to the party involved, United States mail first class postage prepaid, at its respective address set forth above or at such other address as such party may provide on notice in accordance herewith. Notice so given shall be effective when mailed. Borrower shall promptly notify Secured Party of any change in Borrower's address.

23. **GENERAL.** This Agreement constitutes the entire agreement of the parties as to the subject matter and Borrower authorizes Secured Party to amend or insert in this agreement any serial numbers and other identification data about the Collateral, as well as any other omitted factual matters. Borrower shall not amend, alter or change the agreement without a written agreement signed by the parties. Any waiver by Secured Party must be in writing, and forbearance shall not constitute a waiver. Whenever the context of this Agreement requires, the neuter includes the masculine or feminine and the singular includes the plural. If there is more than one Borrower named in this agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. This Agreement shall be governed by the internal laws for the State of California or in any jurisdiction where the Equipment or you are located in our sole and absolute discretion. You agree that this forum selection clause was negotiated and is material consideration for us entering into the Agreement with you. You also agree that the Agreement was entered into and made to be performed in the County of Orange, State of California and any lawsuit filed by you against us must be filed in the County of Orange, State of California. However, you agree that we will have the right to commence any action in any Court having the proper jurisdiction for that action. You agree and consent that we may serve legal papers on you by registered or certified mail, which shall be sufficient to obtain Jurisdiction. **WE EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE TRIAL BY JURY IN ANY ACTION BETWEEN US. IF FOR ANY REASON THIS JURY TRIAL WAIVER IS NOT ENFORCEABLE, THEN WE AGREE TO PROCEED BY JUDICIAL REFERENCE IN ACCORDANCE WITH CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638 ET. SEQ..** Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Borrower shall survive the release of the security interest in the Collateral.

24. **BORROWER'S WARRANTIES.** BORROWER CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH BORROWER HAS SUBMITTED, OR WILL SUBMIT, TO SECURED PARTY IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY BORROWER AND UPON EXECUTION BY BORROWER SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF BORROWER ENFORCEABLE AGAINST BORROWER IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY BORROWER IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY SECURED PARTY NOTWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF BORROWER WARRANTS THAT PERSONS DUE AUTHORITY TO DO SO. BORROWER FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME SECURED PARTY FUNDS THE TOTAL ADVANCE BE OWNED BY BORROWER FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

25. **USED EQUIPMENT.** If any equipment is used, Borrower unconditionally agrees: (a) Borrower finances the Equipment as is" and expressly acknowledges that the equipment is used and not new. Secured Party, NOT BEING THE VENDOR OF THE EQUIPMENT, NOR THE VENDOR'S AGENT, MAKES TO BORROWER NO WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED OF MERCHANTABILITY OR OTHERWISE, INCLUDING BUT NOT LIMITED TO: THE CONDITION, SAFENESS, USABILITY, REPAIR OR DESIGN OF THE EQUIPMENT OR ITS FITNESS FOR ANY PARTICULAR PURPOSE; THE QUALITY OR CAPACITY OF THE EQUIPMENT; THE WORKMANSHIP IN THE EQUIPMENT; THAT THE EQUIPMENT WILL SATISFY THE REQUIREMENTS OF ANY LAW, RULE, SPECIFICATION OR CONTRACT PERTAINING THERETO; AND ANY GUARANTY OR WARRANTY AGAINST PATENT INFRINGEMENT OR LATENT DEFECTS. (b) Secured Party is not responsible or liable for any direct, indirect, incidental or consequential damages or losses resulting from any cause whatsoever, including but not limited to; breach of warranty; the installation, operation or use of the Equipment or any products manufactured thereby, or delay or failure to deliver any item of Equipment. Borrower agrees to settle all such claims directly with Vendor and will not set up against Borrower's obligations to Secured Party any such claims as a defense, counterclaim, setoff, or otherwise.

26. If this document was sent electronically: I hereby warrant that this document has not been altered in any way. Any alteration or revision to any part of this or any attached Documents will make all alterations or revisions non-binding and void.

EFA# 17534-DIS-50187

| (SECURED PARTY)  Hanmi Bank | (BORROWER)  HIGH PLAINS RADIO NETWORK, L.L.C. |
|---|---|
| By: _Fiorella Rosenas_ | By: X _Monte Lee Spearman_ |
| | Monte Lee Spearman, Member |
| DATE:   3/1/2022 | DATE:   2/25/2022 |

THIS IS A COPY

**Hanmi Bank**

## EXHIBIT "A" FOR AGREEMENT NO.: 17534-DIS-50187

The following described equipment is being financed under the terms and conditions agreed to on Equipment Finance Agreement Number: 17534-DIS-50187

| | |
|---|---|
| Vendor Name: | Process Technologies & Services, LLC |
| Street Address: | 10612-D Providence Rd #716 |
| City, State and Zip: | Charlotte, NC 28277-0459 |
| Vendor Phone: | |
| Vendor Invoice Number: | 20220209E |

| Qty. | Equipment Description | Serial Number |
|---|---|---|
| | Transmitters and studio control equipment further described on PT&S invoice 20220209E | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

This Exhibit "A" is hereby verified as correct by the undersigned Borrower.

Borrower: HIGH PLAINS RADIO NETWORK, L.L.C.
By: X _Monte Lee Spearman_
Title: Monte Lee Spearman, Member

Date: 2/25/2022

A COPY OF THIS AGREEMENT WITH SIGNATURE SHALL BE CONSIDERED AN ORIGINAL.

# EXHIBIT 6

**INVOICE FROM SUPPLIER FOR EQUIPMENT FINANCE AGREEMENT NO. 40478603**



# Invoice

10612-D Providence Road, #716
Charlotte, NC 28277-0233

| Phone # |
|---|
| 704-817-5950 |

| Date | Invoice # |
|---|---|
| 2/4/2022 | 20220209E |

| Bill To |
|---|
| High Plains Radio Network, LLC
PO Box 1478
Plainview, TX 79073
USA |

| Ship To |
|---|
| HPRN
860 E 155 Road
Magnum, OK 73554
USA |

| P.O. No. | Payment | Rep | Ship Date | Ship Via | Incoterm |
|---|---|---|---|---|---|
| | Due on receipt | PV | 2/4/2022 | | |

| Item | Description | Qty | Rate(USD) | Amount |
|---|---|---|---|---|
| Equip. | KEYB
Contenental Electrics
416D Transmitter | 1 | 89,125.00 | 89,125.00 |
| Equip. | Bext
Fx1000 Broadcast Amplifier | 1 | 8,936.00 | 8,936.00 |
| Equip. | RVR
RXRL-LCD 130-980 MHz | 1 | 4,924.00 | 4,924.00 |
| Equip. | NiCom
STL Receiver RSL 900 | 1 | 3,985.00 | 3,985.00 |
| Equip. | TFT
STL Reciever 1.7 FHz - 140 MHz | 1 | 3,922.00 | 3,922.00 |
| Equip. | NiCom
STL Transmitter TSL-910 | 2 | 3,899.00 | 7,798.00 |
| Equip. | Burk
ARC-16 Remonte Control Unit | 1 | 2,785.00 | 2,785.00 |
| Shipping Charge | Shipping | 1 | 1,000.00 | 1,000.00 |

Thank you for your business.

| | |
|---|---|
| **Subtotal USD** | $122,475.00 |
| **Sales Tax (0.0%)** | $0.00 |
| **Total USD** | $122,475.00 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $122,475.00 |

Bank Info:
Bank of America, NC2-108-01-01
7911 Providence Road
Charlotte, NC 28277
Account#: 237005994405
Swiftcode: BOFAUS3N
Wire Routing # 026 009 593
ACH Routing # 0530 0019 6
*Customer Must Pay Wire Tranfer Fees*

Pierre vanDongen
Cell: 704-907-6505
pierre@processtechgroup.com

Website: www.processtechgroup.com

# EXHIBIT 7

**FILE-MARKED COPY OF THE UCC-1 FINANCING STATEMENT FILED WITH OKLAHOMA COUNTY CLERK FOR EQUIPMENT FINANCE AGREEMENT NO. 40478603**

2022030302021243
03/03/2022 09:26:54 AM  Pgs: 1
Fee: $10.00
Kerrie Hudson, Deputy County Clerk
Oklahoma County - State of Oklahoma

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**  50066 - Hanmi Bank

Lien Solutions
P.O. Box 29071
Glendale, CA  91209-9071

85144214

OKOK

File with: Oklahoma, OK

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| HIGH PLAINS RADIO NETWORK, L.L.C. | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 3218 Quincy St | Plainview | TX | 79072 | | USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Hanmi Bank | | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | | COUNTRY |
| 3660 Wilshire Blvd., PH A | Los Angeles | CA | 90010 | | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All equipment, subject to Agreement Number #17534-DIS-50187 and subject to any and all existing and future schedules entered into pursuant to and incorporating said Agreement, together with all accessories, parts, attachments and appurtenances appearing or attached to any of the equipment in said Agreement and all substitutions, trade-ins, proceeds, insurance, renewals and replacements of, and improvements and accessions to the equipment in said Agreement.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility  **6b.** Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
85144214          17534-DIS-50187                          CELD 13

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# EXHIBIT 8

**DELIVERY AND ACCEPTANCE CERTIFICATE FOR EQUIPMENT FINANCE AGREEMENT NO. 40478603**

THIS IS A COPY



# **DELIVERY AND ACCEPTANCE CERTIFICATE**

Agreement #: <u>17534-DIS-50187</u>

By signing below, you, the Borrower, agree:

A) That all Equipment described in the Agreement identified above has been delivered, inspected, installed and is unconditionally and irrevocably accepted by you as satisfactory for all purposes of the Agreement; and
B) That we, Hanmi Bank, are authorized to purchase the Equipment and start billing you under the Agreement as set forth in Section 2.
C) That Borrower's obligations under the Agreement are valid and enforceable and that Borrower's unconditional payment obligation shall commence immediately.
D) That upon execution, the Commencement Date set forth in the Agreement shall be in force and effect.

<span style="background-color: yellow">Date of Acceptance</span>:  _____

Agreement #:      <u>17534-DIS-50187</u>

> **IMPORTANT:** THIS DOCUMENT HAS LEGAL AND FINANCIAL CONSEQUENCES TO YOU. DO NOT SIGN THIS DOCUMENT UNTIL YOU HAVE ACTUALLY RECEIVED ALL OF THE EQUIPMENT AND ARE COMPLETELY SATISFIED WITH IT.

Borrower: <u>HIGH PLAINS RADIO NETWORK, L.L.C.</u>

<span style="background-color: yellow">By:</span>    2/25/2022
        Monte Lee Spearman, Member

I hereby authorize _____ to orally verify my/our acceptance of the equipment subject to Equipment Finance Agreement #<u>17534-DIS-50187</u> in my absence.

A COPY OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL.