David Weitman
Texas Bar No. 21116200
Brandy Sargent
(*Admitted Pro Hac Vice*)
David Osipovich
(*Admitted Pro Hac Vice*)
**K&L GATES LLP**
1717 Main Street, Suite 2800
Dallas, Texas 75201
Telephone:     (214) 939-5500
Facsimile:     (214) 939-5849
Email:   david.weitman@klgates.com

ATTORNEYS FOR VERTICAL BRIDGE REIT, LLC

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# WICHITA FALLS DIVISION

| | |
|---|---|
| IN RE: § <br> § <br> HIGH PLAINS RADIO NETWORK, § <br> LLC, § <br> § <br> § <br> Debtor. § | CASE NO.: 24-70089 (SWE) <br><br> Chapter 11, Subchapter V |

## REPLY IN SUPPORT OF MOTION OF CREDITOR VERTICAL BRIDGE FOR ENTRY OF AN ORDER (I) GRANTING VERTICAL BRIDGE RELIEF FROM THE AUTOMATIC STAY, OR (II) ALTERNATIVELY, GRANTING (A) ADEQUATE PROTECTION TO VERTICAL BRIDGE WITH IMMEDIATE PAYMENT OF ITS ADMINISTRATIVE CLAIM FOR POST-PETITION RENT AND (B) COMPELLING IMMEDIATE ASSUMPTION OR REJECTION OF UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY

Vertical Bridge REIT, LLC, hereby files this Reply in Support (the "Reply") of the *Motion of Creditor Vertical Bridge for Entry of an Order (I) Granting Vertical Bridge Relief from the Automatic Stay, or (II) Alternatively, Granting (A) Adequate Protection to Vertical Bridge with Immediate Payment of Its Administrative Claim for Post-Petition Rent and (B) Compelling*

*Immediate Assumption or Rejection of Unexpired Leases of Nonresidential Real Property* [ECF Nos. 65 and 66] (the "Motion").[1]

1. On April 30, 2024, Vertical Bridge filed the Motion, requesting, among other things, relief from the automatic stay to exercise its rights and remedies under the Leases and conclude the litigation pending before the Florida Court (the "Litigation") or, alternatively, granting it adequate protection in one of several forms, including by requiring full or partial payment of administrative rent accruing after the Petition Date.

2. After Vertical Bridge filed the Motion, the Debtor immediately launched a campaign to obfuscate the simple issues that require the Court's attention and to attempt to manufacture leverage over Vertical Bridge though "lawfare."

3. First the Debtor filed its (a) *Motion to Reject All Leases with Vertical Bridge REIT LLC* [ECF No. 67] (the "Rejection Motion") and (b) *Motion to Discontinue Utility Service at Vertical Bridge REIT LLC Inactive and/or Rejected Locations* [ECF No. 70] (the "Discontinuance Motion" and, together with the Rejection Motion, the "Lease Motions"). The Lease Motions request authority to reject each of the Leases as of the Petition Date (including those Leases the Debtor continues to use to this day) in direct violation of the Bankruptcy Code.

4. Next, on May 8, 2024, the Debtor filed *High Plains Radio Network, LLC's First Set of Discovery to Vertical Bridge REIT, LLC Regarding Motion to Lift Stay (Re: Docket No.* [sic] [ECF No. 84] (the "Discovery Requests"). The Discovery Requests include nearly three dozen requests for admission, five requests for production, and eight interrogatories—several of which request separate responses for each of the forty-three Vertical Bridge Leases in question. *See* Discovery Requests, pgs. 9–12. The Debtor has issued the Discovery Requests

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2

notwithstanding the fact that the Debtor already possesses all of the requested information, which Vertical Bridge previously disclosed (or objected to) as part of the Litigation.

5. Finally, on May 14, 2024, the Debtor filed its objection to the Motion for Relief [ECF No. 93] (the "Objection"), claiming—for the first time ever in the Litigation—that the Leases had all been terminated prepetition, obviating the need for any relief to Vertical Bridge. *See* Objection, at ¶ 24. More specifically, the Debtor argued that each of the Leases had expired or been terminated because (a) the Debtor filed the Rejection Motion (*see id.*), (b) "HPRN terminated all subject leases previously, or, alternatively, if the [MLA] is voided the individual leases would have all expired by their original terms in any event" (*see id.* at ¶ 5), (c) the MLA was procured through "fraudulent inducement" and should be voided (*see id.* at ¶¶ 10–16), and (d) the Settlement Agreement was the product of "duress" and should be set aside. *See id.* at ¶¶ 17–23.

6. Vertical Bridge files this Reply to correct the record and highlight that every development since the filing of the Motion further supports granting Vertical Bridge relief from stay.

7. The Debtor has submitted multiple documents to this Court, including its sworn schedules, showing that it continues to occupy Vertical Bridge towers and to actively broadcast from several of the Lease locations, while simultaneously alleging that each of the Leases have terminated. These propositions cannot each be true, and the Debtor should not be allowed to confuse the record by asserting directly opposing positions.

8. In connection with the first-day hearings in this case "Exhibit H009 – Station Status April 4, 2024," the Debtor included a list of stations purportedly existing as of that date, which included at least ***twenty-five*** leases with Vertical Bridge that were either designated to be rejected,

3

negotiated/traded, or assumed and sold—*i.e.*, not terminated as of the Petition Date.[2] *See* Witness and Exhibit List, at PDF pg. 71. Column E "Station Status" lists seventeen stations on Vertical Bridge towers as "on", one as "off", and eight as "off" temporarily. When asked about Exhibit 9 directly, Mr. Monte Spearman, on behalf of the Debtor, affirmed that it reflected "the current footprint … of the company, the current list of stations." *See* Transcript of April 4, 2024, Hearing, at 29:6–10, *In re High Plains Radio Network, LLC* (Bankr. N.D. Tex.) (the "April 4 Transcript") (the Debtor, responding to the above-quoted question, with: "Yes, sir, yes, yeah.").

9. Moreover, the Debtor has twice stated on the record that it intends to market the Leases in order to generate funds to support its bankruptcy case. *See* April 4 Transcript, at 14:22–15:1, *In re High Plains Radio Network, LLC* (Bankr. N.D. Tex.) (Debtor's counsel: "Another option is a sale, which has been presented to the debtor, and there's a sale potential that would take some time to materialize, but we can sell these assets and either keep or reject the Vertical Bridge leases as to the group of stations that would be subject to the APA…."); Transcript of 341 Meeting, at 67:22–68:1 (Bankr. N.D. Tex. May 3, 2024) (Debtor: "And that's why we are trying to get Vertical Bridge to work with us to a point of sale where we can sell the stations. We sell the stations, we pay off Vertical Bridge, we pay off the equipment loans, we pay off what bills we have, and we walk away.").

10. As part of the 341 Meeting testimony, the Debtor acknowledged that at least several of the Leases remained subject to assumption or rejection—a proposition that would be untrue if all of the Leases were terminated pre-petition. *See* Transcript of 341 Meeting, at 67:22–68:1.

---

[2] Vertical Bridge does not concede Exhibit 9 includes the entire universe of active—or non-terminated—Leases; however, Exhibit 9 does serve at least as an admission that not all of the Leases were terminated or expired prior to the Petition Date.

4

11. At the initial 341 Meeting, the United States Trustee directed the Debtor to update several of its Schedules and addenda to its Statement of Financial Affairs, which the Debtor completed on May 13—only one day before it filed the Objection. *See* Amended Schedules and/or Statement of Financial Affairs, *In re High Plains Radio Network, LLC* (Bankr. N.D. Tex. May 13, 2024) [ECF No 88] (the "Amended Schedules"). Attached as Addendum AB-62 to the Amended Schedules, the Debtor included a list of "Lease and FCC License Status" designations that included **_eleven_** separate Vertical Bridge locations that were listed as "VB Active" and over a dozen more identified as being potentially included in a future sale. *See id.* at PDF pg. 51.

12. At the continued 341 Meeting of creditors held on May 15, Mr. Spearman again testified that a number of the locations listed on the amended Schedules remained "on" and broadcasting, and, additionally that the Debtor's equipment remained on the Premises of other locations designated as "off". *See* Transcript of 341 Meeting, at 29:5 – 32:15 (Bankr. N.D. Tex. May 15, 2024).

13. Further the Debtor directly and expressly admitted that several such Leases remained active in the Rejection Motion. "The Debtor has a small subset of leases which are still in use by the Debtor (collectively, the 'Active Leases')." Rejection Motion, at ¶ 14.

14. Finally, the Debtor's submissions ignore two key points, legal and factual, supporting relief from stay: (a) no tribunal has found the Settlement Agreement, MLA or Leases to be terminated, expired, or unenforceable (the Debtor filed this bankruptcy case to stop the Litigation the night before its determination by the Florida Court) and (b) *rejection does not terminate a lease*. *See Eastover Bank v. Sowashee Venture (In re Austin Dev. Co.)*, 19 F.3d 1077, 1082 (5th Cir. 1994) ("Rejection is treated as a breach to preserve the rights of the party whose lease with the debtor has been rejected by providing a prepetition claim; if rejection were deemed

5

a complete, immediate termination, it is not clear what the measure of the creditor's claim would be."). Even if the Debtor were to reject all of the Vertical Bridge Leases, it would still be actively broadcasting from many of the Lease locations, occupying perhaps all of the Lease locations, and leaving Vertical Bridge with the need to remove the Debtor, its property, and in some cases its squatters from the Premises.

15. The Debtor's suggestion that inclusion of the Leases in a potential sale *without any administrative claim* or its artificially low offer of $300 per AM station or $600 per FM station constitutes "adequate protection" is also contrary to the law. Under Section 365(d)(3) lessors are entitled to administrative claims for the full lease obligation owed. *See In re Imperial Beverage Grp.*, 457 B.R. 490, 501 (Bankr. N.D. Tex. 2011).

16. The Debtor's inconsistent factual statements and arguments do nothing but enforce the need for relief from stay both to enforce Vertical Bridge's rights under the Leases and to complete the Litigation. The Debtor's entire response is based on allegations pending in the Litigation and its position regarding Florida law. One of the primary factors courts consider in granting relief from stay to continue with prepetition litigation is judicial economy and efficiency. *See In re S.H. Leggitt Co.*, No. 10-10279-HCM, 2011 WL 1376772, at *4 (Bankr. W.D. Tex. Apr. 12, 2011) (noting as factors to consider in granting relief from stay with respect to prepetition litigation, "the interests of judicial economy, expeditious and economical resolution of the litigation, comity, jurisdiction, and balancing of the harms between the parties"); *see also In re 1776 Am. Props. IV, LLC*, No. 17-30422, 2017 WL 1956851, at *2 (Bankr. S.D. Tex. May 10, 2017) (highlighting advanced nature of the prepetition litigation, judicial economy, and lack of harm to the debtors in granting relief from stay to conclude prepetition litigation).

6

17. In fact, in support of the Objection, the Debtor attached over 400 pages of briefing that it submitted as part of the Litigation. *See generally* Objection, Exhibit 024 [ECF No. 93–2]. The only significance of this avalanche of material for this Court on issues presented by Vertical Bridge's Motion is that nowhere in any of this material does the Debtor ever even claim—let alone argue for or demonstrate—that a single one of the 43 Leases at issue has been terminated. In an overabundance of caution, Vertical Bridge has submitted rebuttal exhibits so that this Court has a more fulsome record of what transpired in the Litigation—a record that the Debtor grossly mischaracterizes in its Objection.[3] Vertical Bridge respectfully observes that resubmitting hundreds of pages of briefing and thousands of pages of discovery to this Court—when the Florida Court is fully briefed and ready to hear argument—aptly makes Vertical Bridge's point that the stay should be lifted so that the parties can finish the Litigation that the Florida Court was ready to resolve on the day after this action was filed.[4]

---

[3] Among the more egregious of the Debtor's mischaracterizations of the Litigation is its failure to mention that its principle—Mr. Spearman—was caught submitting a false affidavit, which was the sole factual basis for his claims of "fraud" and "duress," and was forced to submit a revised affidavit. The veracity of his revised affidavit was about to be tested at an evidentiary hearing before the Florida Court, but the Debtor filed this bankruptcy action at 11:00 pm the night before the hearing, without notifying either Vertical Bridge or the Florida Court until right before the hearing was supposed to commence.

[4] Although Federal Rule of Bankruptcy Procedure 7008 is not applicable to motions for relief from the automatic stay, to the extent the Debtor is attempting to summarily assert claims at issue in the Florida Litigation, Vertical Bridge, for itself and its affiliates, does not consent to entry of final orders or judgments by the Bankruptcy Court in such matters.

WHEREFORE, Vertical Bridge respectfully requests that the Court grant it relief from stay as requested in the Motion.

Dated:  May 21, 2024

          Respectfully submitted,

          **K&L GATES LLP**

          */s/ David Weitman*
          David Weitman
          Texas Bar No. 21116200
          **K&L GATES LLP**
          1717 Main Street, Suite 2800
          Dallas, Texas 75201
          Telephone:     (214) 939-5500
          Email:              david.weitman@klgates.com

          -and-

          Brandy A. Sargent
          [*Admitted Pro Hac Vice*]
          **K&L Gates LLP**
          One SW Columbia Street, Suite 1900
          Portland, OR 97204
          Telephone:     (503) 228-3200
          Email:              brandy.sargent@klgates.com

          -and-

          David R. Osipovich
          [*Admitted Pro Hac Vice*]
          **K&L Gates LLP**
          210 Sixth Ave.
          Pittsburgh, PA 15222
          Telephone: (412) 355-6500
          Emal:  david.osipovich@klgates.com

          *Attorneys for Vertical Bridge REIT, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on May 21, 2024, a true and correct copy of this Reply in Support was served via ECF. The parties set forth below, the 20 largest unsecured creditors, and those parties who have filed notices of appearance and requests for notices were served with this Reply in Support by First Class United States Mail:

High Plains Radio Network, LLC
c/o Monte Lee Spearman, Member
P.O. Box 1419
Vernon, Texas 76384

Debtor's Counsel
c/o Jeffery D. Carruth
Weycer Kaplan Pulaski & Zuber, P.C.
2608 Hibernia St.
Dallas, Texas 75204-2514

United States Trustee
1100 Commerce St., Room 976
Dallas, Texas 75242

Subchapter V Trustee
c/o Scott M. Seidel
6505 West Park Blvd., Suite 306
Plano, Texas 75093

U.S. Small Business Administration
10737 Gateway West, Ste. 300
El Paso, Texas 79935

*/s/ David Weitman*
David Weitman