Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
2608 Hibernia, Suite 105
Dallas, TX 75204-2514
Telephone: (713) 341-1158
Fax: (713) 961-5341
E-mail: jcarruth@wkpz.com

ATTORNEYS FOR
HIGH PLAINS RADIO NETWORK, LLC,
DEBTOR AND DEBTOR IN POSSESSION

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **HIGH PLAINS RADIO NETWORK, LLC,** | § | **CASE NO. 24-70089-swe** |
| | § | **(Chapter 11, Subchapter V)** |
| **DEBTOR.** | § | |
| | § | |

# FIRST AMENDED SUBCHAPTER V PLAN OF HIGH PLAINS RADIO NETWORK, LLC DATED July 8, 2025

## 1. INTRODUCTION AND BACKGROUND INFORMATION.

1.1. This *First Amended Subchapter V Plan of High Plains Radio Network, LLC Dated July 8, 2025* (the "*Plan*") under Subchapter V of Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. (the "*Code*") is filed by High Plains Radio Network, LLC (the "*Debtor*" or "*HPRN*" or the "*Company*").

1.2. HPRN filed this case on March 26, 2024 (the "*Petition Date*"). Scott Seidel is the Subchapter V Trustee.

1.3. For convenience, this plan is based upon the former official small business form, Form B25B. ***Controlling definitions and rules of construction appear in Section 9 below.***

1.4. All creditors and equity security holders should refer to Section 3 through Section 6 of this Plan for information regarding the precise treatment of their claim. ***You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)***

1.5. **Description and History of the Debtor's Business.**

1.5.1. On May 24, 2007, HPRN was registered as a Texas limited liability company. The principal of HPRN at all relevant times has been Monte Spearman ("*Spearman*").

1.5.2. As of January, 2020, the Company commenced the seventh year of a master plan commenced in 2014 to grow and develop the Company with the purchase of numerous small market radio stations, implement all mastered operations by design for efficiently, and have enough stations with a combined population to start the process of working with the national agency buyers to grow the national income side of the business and to also be able to maintain the local business and community needs efficiently. The Company was on track as originally designed.

1.5.3. As of January, 2020, the Company debt totaled only $880,000, payables owed to be fully current were approximately $300,000, general operations were budgeted to be approximately $3,000,000, and we were projecting income between $4,000,000 and $4,400,000. The Company had grown to 46 radio stations spread out over the states of: Arkansas, Colorado, Mississippi, New Mexico, Oklahoma, and Texas.

1.5.4. HPRN had purchased enough stations to have a total population count whereby HPRN felt that it could begin to attract the national agency buys. HPRN believed that with continued heavy payment towards debt, HPRN could possibly end 2020 with all Company debt paid in full and all growth plans completed, meaning that HPRN would be able to start 2021 with the full completion of the original seven year growth plan, that was started in 2014. HPRN was on track, dealt with the ups and downs, made the needed purchases, installed the needed operational systems, hired the best available people on a local basis, and we were fully set to move into the final steps of the original master plan.

1.5.5. Beginning in March, 2022, the Covid-19 pandemic became a completely unknown part of the operational environment. Covid impacted all of the small local communities served by HPRN. The radio stations were local leaders for high school sports, local community annual events, and so forth. With all of those events shut down the ability to sell advertising and collect the associated revues from high school events decreased significantly.

1.5.6. Eventually throughout 2020, 2021, 2022, and into 2023, the Company reduced our staffing down to only 25% of the total headcount from the beginning of 2020, started to combine operations to eliminate and to minimize operations cost. Income continued to decrease to approximately 60% of the previous years and to less than 50% of what had been projected for 2020 and beyond.

1.5.7. To maintain the cashflow needs, the Company started to make small equipment loans and small cash-advance loans (both in the name of the Company and some in the name of Mr. Spearman, individually) for cash injections into the Company. The Company was awarded the PPP loans twice, qualified for some of the ERC payments, and received one small Covid related loan with SBA.

1.5.8. The Company is responsible for all local communications to our communities as required by the FCC, and the Company spent the funds necessary to maintain those standards with on-air audio products and for coverage of the signals. The Company struggled but did operate properly as required. The Company started to make various technical changes to numerous stations. All changes required the need to receive approval of the FCC, which is very expensive and takes a lot of time and engineering.

1.5.9. As 2023 arrived, and the Covid period started to end, the operations began to return to normal. However, clients were slow to restart their business operations, and the smaller communities had themselves had changed in the process. For example, in one of our communities, these are the changes caused by Covid.

| | | |
|---|---|---|
| High School Sports | No or minimal events for 2020-2022 | Restarted in 22-23 |
| Community Annual Event | No or minimal events for 2020-2022 | Restarted in 22-23 |
| New Auto dealerships | Before: 4 | After: 1 |
| Local Restaurants | Before: 23 | After: 11 |
| Furniture Stores | Before: 6 | After: 2 |
| Real Estate Agencies | Before: 9 | After: 4 |
| Farm Implement Dealers | Before: 6 | After: 3 |

1.5.10. Every locally owned business that closed was more than likely a previous customer of the local radio station. The income revenue lost was regained only very slowly from those businesses and hopefully the communities will become financially solid in time and more locally owned businesses will open and the radio station(s) local clientele and income will reestablish itself.

1.5.11. Looking forward, business has started to regrow, and the Company is operating more efficiently than ever before. With more direct management of the sales, the Company expects to become more profitable and for the cashflow to increase across the assets that remain in operation.

1.5.12. In addition to challenges from economy conditions, the Company faced difficulties beginning in 2017 in its relationship with its primary tower lessor, Vertical Bridge REIT, LLC and its affiliates (collectively, "*Vertical Bridge*").

1.5.13. Prior to the Petition Date, Vertical Bridge and HPRN engaged in one more disputes. The history of that dispute is summarized in the *Motion of Debtor to Approve Resolution Agreement with Vertical Bridge REIT, LLC and its Affiliates (Docket No. 220)* and the resulting Order (Docket No. 253) approving the Bankruptcy Resolution Agreement. The resolution of the various disputes with Vertical Bridge provides the framework for the opportunity for the continuity of the Vertical Bridge tower leases as assumption and assignment under Code §365 under terms provided by Vertical Bridge and/or the ability to enter into new leases with the various purchasers.

1.6. **Insiders and Management of HPRN.** Monte Spearman is the sole member of the Debtor, and is the manager and/or president of the Debtor. He will continue in the same capacity after confirmation through the Plan. His salary will be $60,000 per year upon the Effective Date.

1.7. **Significant distributions to be made under the Plan and during the Chapter 11 case.**

1.7.1. The history and background of HPRN, and the events leading to bankruptcy, case are summarized above.

1.7.2. *Events during and information relating to this Bankruptcy Case:* The entirety of the events that have occurred during this Chapter 11 case may be found on docket sheet of this case available at the Court or through the PACER website of the Court, ***https://ecf.txwb.uscourts.gov/***. Copies of all the pleadings filed in the Bankruptcy Case also are available for download at a Google Drive folder at the link.

https://drive.google.com/drive/folders/1Ev7qSGXE50QmRDQfrQ1vUmudKhU2hA5R?usp=sharing

1.7.3. ***Plan process to date.*** After multiple extensions of the Code §1190 deadline to file a plan, the Debtor filed its initial plan on March 24, 2025 (Docket No. 282).

1.7.4. ***Sale Orders.*** *On May 20, 2025, the Court entered orders approving of three sales transactions for substantially all of the radio station assets of the Debtor.*

| Docket No. | Sale Approved |
|---|---|
| 314 | E-Radio Network, LLC (West Texas Stations) |
| 315 | E-Radio Network, LLC (Arkansas stations) |
| 316 | Blacksun Private Equity, Inc. |

As of the date of this Plan, the status of the three sales approved by the Court is shown in the table below.

| Sale Group | Status |
|---|---|
| ERN – Arkansas | Documents pending with FCC.<br>Anticipate closing before July 31, 2025 |
| ERN West Texas | Documents pending with FCC.<br>Anticipate closing before July 31, 2025 |
| Blacksun | Documents about to be filed with FCC.<br>Anticipate closing before August 31, 2025 |

1.7.5. _Recovery of Avoidable Transfers and other claims and causes of action of the estate._ HPRN shall **RETAIN** avoidance actions or any other claims, causes of action, and/or any and all other lawsuits under Code §§544, 547, 548, 549, and/or 550, including any objections to claims and any related set offs, and any and all facts, claims, issues, rights, remedies, and/or defenses related thereto, including the claims and causes of action set forth in **Exhibit H305**.

***Otherwise, HPRN may provide notice of additional claims and/or causes of action by a supplement to the Plan to be filed within seven (7) days of the Confirmation Hearing.***

1.7.6. _Objections to Claims._ Except to the extent that a claim is already allowed pursuant to a final non-appealable order, HPRN reserves the right to object to all claims (including scheduled claims, and regardless of whether such claims are noted as contingent, liquidated, or disputed in the schedules) through and until and even after the Effective Date. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

## 1.8. Current And Historical Financial Conditions.

1.8.1. The assets and liabilities of HPRN are described in the Schedules (Docket No. 16) and Statement of Financial Affairs (Docket No. 32) filed by HPRN in this case. A summary of the assets of and claims against HPRN appears in **Exhibit H301**[1] and **Exhibit H302** attached hereto. The deadline for filing proofs of claim occurred/occurs on January 12, 2024, and May 1, 2024 for governmental entities.

1.8.2. A liquidation analysis appears in **Exhibit H303**.

1.8.3. Projections and/or a cash waterfall in support of the Plan appear in **Exhibit H304**.

***BECAUSE THE PLAN SCHEDULES MAY CHANGE ONCE CREDITORS REVIEW AND PROVIDE COMMENTS ON THE PLAN, DEBTOR MAY AMEND THE PLAN SCHEDULES WITH THE PLAN SUPPLEMENT SEVEN (7) DAYS PRIOR TO THE CONFIRMATION HEARING OR OTHERWISE PRIOR TO THE CONFIRMATION HEARING.***

1.8.4. HPRN reserves the right to amend any of the schedules and other information in support of the Plan prior to the Confirmation Hearing.

[1] The Debtor is consecutively numbering all exhibits throughout this case. The exhibits related to the plan and disclosure statement will being with the number 300 beginning with the ballot exhibit to distinguish from previous exhibits used in this case.

**NO CLAIM SHOULD BE DEEMED TO BE ALLOWED IN ANY PARTICULAR AMOUNT BASED UPON A DESCRIPTION OR REFERENCE TO ANY SUCH CLAIM OR TO ANY CLASS OF CLAIMS IN THE EXHIBITS. THE DEBTOR DOES NOT WAIVE ANY FACT, CLAIM, ISSUES, RIGHT, REMEDY, AND/OR DEFENSE WITH RESPECT TO A DESCRIPTION OR REFERENCE TO ANY CLAIM IN THE EXHIBITS.**

## 2. Summary/Overview of Plan.

2.1. The Plan provides for the distribution of the proceeds of one or more Code § 363(f) sale of the assets of the Debtor and the liquidation and or reorganization of the Debtor into a smaller company. As of the filing of this plan, the Debtor anticipates filing two or three different sale notices under the existing Sales Procedures Order (Docket No. 191) which will result in at least $2 million to be applied to the waterfall of allowed claims in this case.

## 3. CLASSIFICATION OF CLAIMS

The classification of claims and interests and the impairment of claims and interests is set forth in Sections 3-4 below and/or in the Exhibits to the Plan.

## 4. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

4.1. **Unclassified Claims.** Certain types of claims are automatically entitled to specific treatment under the Code. Under Code §1123(a)(1), administrative expense claims, and priority tax claims are not in classes. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, pursuant to Code §1129(a)(1), the Debtor has *not* placed such claims in any class.

4.2. **Administrative Expenses.** Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code §507(a)(2). Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to different treatment.

As of the filing of this Plan, known administrative expense claims consist of the allowed and to be allowed, fees and expenses of Weycer Kaplan Pulaski & Zuber P.C. ("*WKPZ*") incurred for HPRN, the allowed fees and expenses of special counsel Kabat Chapman & Ozmer, LLP, the allowed fees of the broker, Media Services Group, Inc., and the fees of the Subchapter V Trustee.

Payment of allowed administrative expense claims may occur with the First Distribution or as soon thereafter as such administrative expense claims are allowed.

Expenses incurred after the Effective Date that otherwise would constitute administrative expense claims before the Effective Date may be paid as such expenses are incurred.

4.3. **Priority Tax Claims.** Priority tax claims are unsecured income, employment, and other taxes described by Code §507(a)(8). Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

Debtor is treated as an "S-Corp" for federal income tax purposes and thus Debtor has no federal income tax liability. Debtor has scheduled one small claim for the IRS, which the Debtor may elect to dispute. Debtor is current on all payroll taxes and thus has no 940/941 tax liability.

The Debtor scheduled various local tax claims which did not file secured proofs of claim, and those tax claims will be treated as priority tax claims.

Payment of priority tax claims, if any, may occur with the Second Distribution.

**5. TREATMENT OF CLAIMS AND INTERESTS.** The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

5.1. **Class 1 — Ad Valorem Taxes**

5.1.1. Identity of Claims in Class: Class 1 consists of the allowed secured claim(s) of any governmental entity asserting ad valorem property tax claims against any property of the Debtor (collectively, the "Ad Valorem Tax Claimants").

5.1.2. Treatment: The Debtor may pay the allowed secured claims in Class1 in full with the Second Distribution.

5.1.3. Voting. Class 1 is IMPAIRED and may vote for or against the Plan.

5.2. **Class 2 — Small Business Administration ("SBA").**

5.2.1. Identity of Claims in Class: Class 2 consists of the allowed secured claim of the SBA. The Debtor generally does not dispute the SBA claim, except that the Debtor reserves all rights with respect to the final amount of such claim.

5.2.2. Treatment: The Debtor may pay the allowed secured claim the SBA in full with the Second Distribution.

5.2.3. Voting. Class 2 is IMPAIRED and may vote for or against the Plan.

5.3. **Class 3 — RESERVED**

5.3.1. [SECTION RESERVED]

5.4. **<u>Class = 4 — Allowed Secured Claims of Equipment Lenders.</u>**

5.4.1. <u>Identity of Claims in Class:</u> This class consists of the various lenders with claims secured claim equipment used at the radio stations (each an "Equipment Lender" and collectively, the "Equipment Lenders").

5.4.2. <u>Treatment:</u> Pursuant to one or more Sale Orders, any lien(s) of an Equipment Lender which the Debtor has not challenged as of the operative Distribution Date shall attach to the proceeds of the sale resulting from the Sale Orders. Upon the Distribution Date, the Debtor shall remit the face amount of balance of the allowed claim of the Equipment Lender, without post-petition interest and attorneys fees, and without a process to determine the value of the collateral and/or bifurcate the allowed claim between secured and unsecured portions, in full and final settlement of the entire claim of the Equipment Lender and to discharge any and all liens of the Equipment Lender.

The treatment described above is intended to make the distribution process more efficient and less costly for all parties involved. The Debtor possibly will pay more than the Debtor needs to pay based upon the value of the collateral, but, on the other hand, the Debtor postulates that the time, effort, and expense to engage in valuation litigation would outweigh any potential benefit. Furthermore, equipment lenders have remained patient with the Debtor throughout this case.

If any Equipment Lender objects to this treatment, then the Debtor may elect to file an appropriate action in this case, a claim objection or otherwise, in order to value the collateral and to seek to bifurcate the claim between allowed secured portions and general unsecured portions, with any distribution being delayed until a resolution of such dispute.

Furthermore, to the extent that the Debtor scheduled the Equipment Lender as disputed in Schedule D and the Equipment Lender failed to file a proof of claim, then the Equipment Lender shall be deemed to have forfeited the right to contest the amount determined by the Debtor in the schedules to discharge any and all liens of the Equipment Lender.

Debtor reserves the right to contest the amount of any claim of any Equipment Lender, especially to ensure that the balance is correct.

Payment of allowed claims of Equipment Lender may occur with the Second Distribution.

5.4.3. <u>Voting.</u> Class 4 is IMPAIRED and may vote for or against the Plan.

Because the collateral of each Equipment Lender is unique, the Debtor reserves the right to create a separate class for each Equipment Lender for voting purposes. (The treatment for each Equipment Lender proposed is the same and is not repeated any number of times for the sake of efficient drafting.)

5.5. **Class 5 — General Unsecured Claims.** This class consists of allowed general unsecured claims that are not secured by property of the estate and that are not entitled to priority under §507(a) of the Code.

5.5.1. Identity of General Unsecured Claims: The holders of allowed general unsecured claims.

5.5.2. Treatment of General Unsecured Claims: The allowed general unsecured claims will receive a pro-rata distribution of any funds remaining in the Debtor after the satisfaction of administrative expense claims, priority claims, and all other allowed claims in Classes 1-4 above. Distributions may occur with the Third Distribution.

5.5.3. Voting. Class 5 is IMPAIRED and may vote for or against the Plan.

5.6. **Class 6 — Class of Equity Interest Holders.** The holders of equity interests in the Debtor will retain their interests. Thus, Monte Spearman will remain the sole member of the Debtor.

Class 6 is unimpaired and is deemed to accept the Plan.

## 6. ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.1. Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

6.2. Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

6.3. Settlement of Disputed Claims. After the Effective Date, the Debtor will have the power and authority to settle and compromise a disputed claim without court approval and without compliance with Bankruptcy Rule 9019.

## 7. PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1. The Resolution Agreement and one or more notices under the Sale Procedures Order provides the process for the assumption and assignment of leases of nonresidential real property, and/or the entry of new leases, as applicable, regarding Vertical Bridge.

7.2. Other executory contracts and unexpired lease may be assumed and assigned as part of the one or more notices under the Sale Procedures Order or other motion of the Debtor.

7.3. The Debtor may file one or more motions to assume executory contracts prior to the effective date of the Plan.

7.4. Otherwise, any executory contracts and/or unexpired lease that are not assumed by the Debtor and/or subject to a motion or notice to assume, as of the Effective Date, shall be rejected as of the Effective Date.

7.5. **PROOF OF CLAIM FOLLOWING REJECTION: A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than fourteen (14) days after the date of the order confirming this Plan.** Any such claim will be treated, if allowed general unsecured claim and the general unsecured creditor class will be adjusted accordingly.

## 8. MEANS OF IMPLEMENTING THE PLAN.

8.1. **Sources of cash to fund the Plan.**

8.1.1. The proceeds of the radio station asset sales shall provide the cash necessary to satisfy the requirements under the Plan.

8.2. **Distribution of Payments.**

8.2.1. The reorganized Debtor shall be the disbursing agent for payments under the Plan, or in the event of a confirmation under Code §1191(b), then the Subchapter V Trustee shall act as the disbursing agent, unless the Court orders otherwise. The Debtor hereby moves to be the disbursing agent in the vent of confirmation under Code §1191(b).

8.2.2. The Debtor anticipates distributions occurring at three points or stages following the Effective Date.

8.2.2.1. ***First Distribution***. One or more distributions occurring soon after the Effective Date and concurrent with the closing of one or more asset sales, of the funds necessary to satisfy cure claims and allowed administrative expense claims allowed to date for which any balance is pending (the "*First Distribution*").

8.2.2.2. ***Second Distribution***. One or more distributions occurring soon after the Effective Date and concurrent the closing of one or more asset sales, of the funds necessary for lease cures (i.e. Vertical Bridge) and the funds necessary to make the distributions necessary to any remaining allowed administrative expense claims still to be paid, cure claims still to be paid, and Classes 1-4, including the Equipment Lenders (the "*Second Distribution*"). ***One or more Second Distributions may occur to different groups of Equipment Lenders depending upon the timing of the closing and funding of the relevant sales***.

8.2.2.3. ***Third Distribution***. One or more distributions occurring after the completion of the Second Distribution, including distribution(s) to Class 5 (the "*Third Distribution*").

8.3. **Post-confirmation Management.** The post-confirmation management of the Debtor shall consist of Monte Spearman.

8.4. **Risk Factors.** The proposed Plan has the following risks: The Debtor will fail to close the sales contemplated under one or more notices filed under the Sales Procedures Order and/or under the Plan.

## 9. GENERAL PROVISIONS

9.1. **Definitions and Rules of Construction.** The definitions and rules of construction set forth in Code §§101 and 102 shall apply when terms are defined or construed in the Code. Other terms are defined throughout the Plan, and terms may be defined in, and then used in the Plan and vice versa. Any reference to the Debtor that applies to any period of time after the Effective Date shall refer to the Debtor as the Reorganized Debtor. In addition, the following terms used in the Plan are defined below.

9.1.1. ***"Confirmation Hearing***" shall mean and refer to the hearing conducted by the Court to consider this Plan.

9.1.2. "***Confirmation Order***" shall mean and refer to the order confirming this Plan.

9.1.3. "***Estate Claims***" shall mean and refer to any claims and/or causes of action of the Debtor and/or the estate identified in the schedules, the SOFA, the Plan (including Plan §§ 1.8.8 and 13.2 and/or Exhibit H305), and/or the Plan Supplement.

9.2. **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.3. **Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.4. **Primacy of the Plan and Confirmation Order.** To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control. ***Unless directed by the Court to so earlier, the Debtor will file notice of a proposed Confirmation Order seven (7) days prior to the Confirmation Hearing.***

9.5. **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.6. **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.7. **Corporate Governance.** After the Effective Date of the order confirming the Plan, the management of the Debtor will consist of Monte Spearman.

9.8. **Corporate Authority.** All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further approval, notice or meetings, that might otherwise be required under applicable state law or otherwise, other than the notice provided by serving this Plan on all known creditors of HPRN, all interest holders, and all current directors or managers of HPRN.

9.9. **Sales of Property.** For the avoidance of doubt, any sales of property that occur under this plan by the Reorganize Debtor that may occur after confirmation and the occurrence of the effective date, require no further approval of the Court.

9.10. **Fixing of Claims.** To the extent that the modification and/or fixing of any claim occurs under the Plan, the Plan also constitutes an objection to any filed proof of claim and/or scheduled claim under Code §502 and/or Bankruptcy Rules 3007 and 9014, and any applicable Local Rules.

9.11. **Settlement of Claims and Disputes.** The Plan also constitutes a motion under Bankruptcy Rule 9019 to the extent necessary to confirm the Plan.

9.12. **Debtor name change.** The Debtor may change its name and/or adopt one or more business aliases after the Effective Date.

## 10. EFFECT OF CONFIRMATION OF PLAN — DISCHARGE

On the Effective Date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in Code §1141(d)(1)(A) except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in Code §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c), or (iii) of a kind specified in Code §1141(d)(6)(B). After the Effective Date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

## 11. EFFECTIVE DATE OF PLAN.

The effective date of the Plan (the "*Effective Date*") shall be the first business day following the date that is fourteen (14) days after the entry of the order of confirmation. If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay of the Confirmation Order expires or is otherwise terminated. ***The Effective Date may occur without further notice by the Debtor***.

## 12. FINAL DECREE

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## 13. OTHER PLAN PROVISIONS

13.1. **Scope and Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction to: ***(i)*** hear and determine pending applications for the assumption or rejection of contracts or leases and the allowance of Claims resulting therefrom; ***(ii)*** hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals, and including any Estate Actions; provided, however, that the Reorganized Debtor shall not be required to seek or obtain approval of the Bankruptcy Court under Bankruptcy Rule 9019 or otherwise as to the settlement or compromise of any Estate Actions post-Effective Date; ***(iii)*** ensure that distributions to holders of Allowed Claims are accomplished as provided herein; ***(iv)*** hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, estimation, or payment of any Claim or Interest, and to enter Estimation Orders; ***(v)*** hear and determine all Fee Applications and Fee Claims; provided, however, that the Reorganized Debtor shall not be required to seek or obtain approval of the Bankruptcy Court under section Code §330 or otherwise as to the allowance or payment of professional fees post-Effective Date; ***(vi)*** enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated; ***(vii)*** hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan; ***(viii)*** enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder; ***(ix)*** consider any modification of the Plan pursuant to Code § 1127, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order; ***(x)*** enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer and enforce injunctions provided for in the Plan and the Confirmation Order; ***(xi)*** recover all assets of the Debtor and property of the estate, wherever located; ***(xii)*** hear and determine matters concerning state, local, and federal taxes in accordance with Code §§ 346, 505, and 1146; ***(xiii)*** hear and determine any other matter not inconsistent with the Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and enter a final decree closing the Bankruptcy Case; and (***xiv***) to reopen the case and enforce the Plan as set forth in Section 5 above.

13.2. **Litigation and retained causes of action.** HPRN expressly retains the claims and causes of action referenced and described in **Exhibit H305.**

***Otherwise, HPRN may provide notice of additional claims and/or causes of action by a supplement to the Plan to be filed within seven (7) days of the Confirmation Hearing.***

***{continued on following page}***

**HIGH PLAINS RADIO NETWORK, LLC, DEBTOR AND DEBTOR-IN-POSSESSION**

**By:**

/s/ Monte Spearman
**By: Monte Spearman, Manager/President**

**Proposed Counsel to the Debtor and Debtor in Possession:**

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
Jeff Carruth (SBT #24001846)
2408 Hibernia St. Ste 105
Dallas Texas 75204
(713) 341-1158
E-mail: jcarruth@wkpz.com

| | A | B | C | D |
|---|---|---|---|---|
| 1 | | | | |
| 2 | **EXHIBIT H301** | | | |
| 3 | **Assets as of Petition Date** | | | |
| 4 | **No Admission of Liability** | | | |
| 5 | **Asset Description** | **Value on Schedule A-B (Docket No. 15)** | **Realizable Value** | **NOTE** |
| 6 | Part 1: Cash and Cash Equivalents | 7,486.47 | 7,486.47 | |
| 7 | Part 2: Deposits and Prepayments | 0.00 | 0.00 | |
| 8 | Part 3: Accounts Receivable | 180,416.00 | 0.00 | |
| 9 | Part 4: Investments | 0.00 | 0.00 | |
| 10 | Part 5: Inventory, excluding agriculture assets | 0.00 | 0.00 | |
| 11 | Part 6: Farming and Fishing-related | 0.00 | 0.00 | |
| 12 | Part 7: Office Furniture, fixtures, and equipment; and collectibles | 106,000.00 | 25,000.00 | |
| 13 | Part 8: Machinery, equipment, and vehicles **(Scheduled at REPLACEMENT VALUE)** | 3,311,000.00 | 500,000.00 | **Any unencumbered equipment is scattered in various locations, equipment is specialized for the operations of this Debtor, equipment depends on equipment that would repossessed by secured lenders, and/or equipment only has value in current configurations.** |
| 14 | Part 9: Real Property | 0.00 | 0.00 | |
| 15 | Part 10: Intangibles and intellectual property | 0.00 | 0.00 | |
| 16 | Part 11: All other assets | 0.00 | 0.00 | |
| 17 | **TOTAL** | 3,604,902.47 | 532,486.47 | |
| 18 | | | | |
| 19 | https://d.docs.live.net/a8cb65fc4fa3b1b3/!!!alpha files/!!!!! misc files c. 20250706/hprn plan 002/[plan exhibits HPRN 001.xlsx]H302 | | | |

| | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **EXHIBIT H302** | | | | | | | | | | | |
| 2 | **NO ADMISSION OF LIABILTY** | | | | | | | | | | | |
| 3 | | | | | | | **Estimated Allow - NO ADMISSION, DEBTOR RESERVES ALL RIGHTS** | | | | | |
| 4 | **Creditor** | **Eqip Station** | **Source** | **Disputed 1 = yes** | **Class** | **Total Claim Sched/POC** | **Admin** | **Secured** | **Priority** | **Unsecured** | **Total Allow** | **Notes** |
| 5 | WKPZ - Pre-Effective Date | n/a | tbd | 0 | 503,507 | 150,000.00 | 150,000.00 | 0 | 0 | 0 | 150,000.00 | Est. pending final, $36k paid |
| 6 | WKPZ - Post-Effective Date | | | 0 | 503,507 | 50,000.00 | 50,000.00 | 0 | 0 | 0 | 50,000.00 | Estimate |
| 7 | Kabat Chapman & Ozmer, LLP | n/a | DE259 | 0 | 503,507 | 63,593.00 | 63,593.00 | 0 | 0 | 0 | 63,593.00 | Final allowed |
| 8 | MSG broker (Whitley) | n/a | DE072 | 0 | 503,507 | 60,000.00 | 60,000.00 | 0 | 0 | 0 | 60,000.00 | Agreed commission, less than contract |
| 9 | Vertical Bridge RETI LLC | various | DE 253 | 0 | 503,507 | 300,000.00 | 300,000.00 | 0 | 0 | 0 | 300,000.00 | Cure claims per Resolution Agreement |
| 10 | SubV Trustee | | | 0 | 503,507 | 10,000.00 | 10,000.00 | 0 | 0 | 0 | 10,000.00 | Estimate |
| 11 | Operrationanal and/or misc. wind down expenses | n/a | tbd | 0 | 503,507 | 10,000.00 | 10,000.00 | 0 | 0 | 0 | 10,000.00 | Estimate |
| 12 | Ailco | n/a | Sched D | 1 | 4 | 24,453.00 | 0.00 | **24,453.00** | 0.00 | 0.00 | 24,453.00 | Disputed + No POC |
| 13 | American Express | n/a | Sched F | 0 | 5 | 655.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Revised amount |
| 14 | American Express | n/a | Sched F | 0 | 5 | 26,821.53 | 0.00 | 0.00 | 0.00 | 22,000.00 | 22,000.00 | Revised amount |
| 15 | American Express | n/a | Sched F | 0 | 5 | 2,269.32 | 0.00 | 0.00 | 0.00 | 1,200.00 | 1,200.00 | Revised amount |
| 16 | American Express | n/a | Sched F | 0 | 5 | 17,524.53 | 0.00 | 0.00 | 0.00 | 14,000.00 | 14,000.00 | Revised amount |
| 17 | Amur | n/a | Sched D | 1 | 0 | 80761.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 18 | Amur | n/a | Sched D | 1 | 0 | 61782.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 19 | Amur | n/a | Sched D | 1 | 0 | 107115.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 20 | Amur | n/a | Sched D | 1 | 0 | 74778.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 21 | Amur Equipment Finance, Inc. | n/a | Sched F | 0 | 0 | 98453.92 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 22 | Amur Equipment Finance, LLC | Studio Equipment<br>Pine Bluff Ar<br>KYBE Tipton Ok<br>KVWC AM Veron Tx<br>KVWC FM Vernon Tx | poc 021 | 0 | 4 | 98,453.92 | 0.00 | **98,453.92** | 0.00 | 0.00 | 98,453.92 | Amur #1067515 |
| 23 | Arrakis Automations | n/a | Sched F | 0 | 5 | 900.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Revised amount |
| 24 | ASCAP | n/a | Sched F | 0 | 0 | 5,000.00 | 0.00 | 0.00 | 0.00 | 5,000.00 | 0.00 | Superceded by POC |
| 25 | ASCAP | n/a | Sched F | 0 | 0 | 103,172.00 | 0.00 | 0.00 | 0.00 | 103,172.00 | 0.00 | Superceded by POC |
| 26 | ASCAP (American Society of Compos | n/a | poc 022 | 0 | 5 | 103,172.00 | 0.00 | 0.00 | 0.00 | 62,000.00 | 62,000.00 | Object - audit adjustment |
| 27 | Ascentium | n/a | Sched D | 1 | 4 | 59,700.00 | 0.00 | **0.00** | 0.00 | 0.00 | 0.00 | See POC 013 - is dba of Regions |
| 28 | Atmos Energy | n/a | Sched F | 0 | 5 | 385.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 29 | Balboa | n/a | Sched D | 1 | 0 | 71,295.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 30 | Balboa Capital Corporation | n/a | Sched F | 0 | 0 | 73,844.18 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 31 | Balboa Capital Corporation | KRIA Plainview, TX | poc 024 | 0 | 4 | 73,844.18 | 0.00 | **73,844.18** | 0.00 | 0.00 | 73,844.18 | |
| 32 | Black Hills Natural Gas | n/a | Sched F | 0 | 5 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 33 | Blue Bridge Financial, Inc. | n/a | Sched F | 0 | 0 | 97,415.10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 34 | Bankfinancial (Blue Bridge) | KKYN-Plainview, TX | poc 020 | 0 | 4 | 97,415.10 | 0.00 | **97,415.10** | 0.00 | 0.00 | 97,415.10 | |
| 35 | Blue Ridge | n/a | Sched D | 1 | 0 | 94,550.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 36 | Bluepeak Telephone | n/a | Sched F | 0 | 4 | 320.00 | 0.00 | 0.00 | 0.00 | 320.00 | 320.00 | |
| 37 | Broadcast Music, Inc. | n/a | Sched F | 0 | 0 | 5,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 38 | Broadcast Music, Inc. | n/a | poc 006 | 0 | 4 | 14,178.10 | 0.00 | 0.00 | 0.00 | 10,300.00 | 10,300.00 | Object - audit adjustment |
| 39 | Broadcast Music, Inc. | n/a | Sched D | 0 | 0 | 14,178.10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 40 | Cellco Partnership d/b/a Verizon Wi | n/a | Sched F | 0 | 0 | 2,617.26 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 41 | Cellco Partnership d/b/a Verizon Wi | n/a | poc 018 | 0 | 4 | 2,617.26 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 42 | City of Altus | n/a | Sched F | 0 | 4 | 425.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 43 | City of Hereford | n/a | Sched F | 0 | 4 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 44 | City of Plainview | n/a | Sched F | 0 | 4 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 45 | City of Vernon | n/a | Sched F | 0 | 4 | 60.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 46 | Crest Capitol | | Sched D | 1 | 4 | 147,297.00 | 0.00 | **0.00** | 0.00 | 0.00 | 0.00 | See POC 013 - now US Bank |
| 47 | Crest Capitol | | Sched D | 1 | 4 | 29,061.00 | 0.00 | **0.00** | 0.00 | 0.00 | 0.00 | See POC 013 - now US Bank |
| 48 | Dept. of Treasury - IRS | n/a | poc 014 | 0 | 507 | 1,014.16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Debtor belives correct amount is $0.00. |
| 49 | Eastland County Appraisal District | n/a | Sched D | 0 | 0 | 3,544.04 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 50 | Eastland County | | poc 002 | 0 | 1 | 3,544.04 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Debtor belives correct amount is $0.00. |
| 51 | Entergy Utiltiy | n/a | Sched F | 0 | 20 | 3,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |

| | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **EXHIBIT H302** | | | | | | | | | | | |
| 2 | **NO ADMISSION OF LIABILTY** | | | | | | | | | | | |
| 3 | | | | | | | **Estimated Allow - NO ADMISSION, DEBTOR RESERVES ALL RIGHTS** | | | | | |
| 4 | **Creditor** | **Eqip Station** | **Source** | **Disputed 1 = yes** | **Class** | **Total Claim Sched/POC** | **Admin** | **Secured** | **Priority** | **Unsecured** | **Total Allow** | **Notes** |
| 52 | Excel Energy | n/a | Sched F | 0 | 20 | 775.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 53 | Federal Communications Com. | n/a | Sched F | 0 | 20 | 68,000.00 | 0.00 | 0.00 | 0.00 | 84,000.00 | 84,000.00 | Revised amount |
| 54 | Global Music Rights | n/a | Sched F | 0 | 20 | 1,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Revised amount |
| 55 | Global Music Rights | n/a | Sched F | 0 | 20 | 4,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Revised amount |
| 56 | Global Music Rights | n/a | Sched F | 0 | 20 | 31,000.00 | 0.00 | 0.00 | 0.00 | 23,000.00 | 23,000.00 | Revised amount |
| 57 | Hamni Bank | n/a | Sched D | 1 | 0 | 95,217.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 58 | Hanmi Bank | n/a | Sched D | 0 | 0 | 169,767.68 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 59 | Hanmi Bank | KEYB Mangum, OK | poc 009 | 0 | 4 | 169,767.68 | 0.00 | **169,767.68** | 0.00 | 0.00 | 169,767.68 | |
| 60 | Hanszen LaPorte | n/a | Sched F | 0 | 0 | 125,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 61 | Hanszen Laporte, LLP | n/a | poc 028 | 0 | 5 | 122,351.23 | 0.00 | 0.00 | 0.00 | 122,351.23 | 122,351.23 | |
| 62 | Hitachi | | Sched D | 1 | 4 | 43,676.00 | 0.00 | **0.00** | 0.00 | 0.00 | 0.00 | See POC 005 - now Mitsubishi. |
| 63 | iHeart Media | n/a | Sched F | 0 | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 64 | iHeart Media | n/a | poc 015 | 0 | 5 | 5,200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Object - audit adjustment |
| 65 | Internal Revenue Service | n/a | Sched F | 0 | 0 | 1,014.16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 66 | Liberty Mutual Insurance | n/a | Sched F | 0 | 5 | 3,425.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - recurring insurance |
| 67 | Litefund Solutions | n/a | Sched F | 0 | 5 | 47,000.00 | 0.00 | 0.00 | 0.00 | 47,000.00 | 47,000.00 | |
| 68 | Malakoff ISD | n/a | Sched D | 0 | 0 | 1,974.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 69 | Malakoff ISD | n/a | poc 007 | 0 | 1 | 1,974.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Debtor belives correct amount is $0.00. |
| 70 | Marlin - Peak Com. | n/a | Sched D | 1 | 0 | 51,467.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 71 | Marlin Lease Corp | Studio Frederick OK | poc 010 | 0 | 4 | 53,375.85 | 0.00 | **53,375.85** | 0.00 | 0.00 | 53,375.85 | |
| 72 | Marlin Leasing Corp | n/a | Sched F | 0 | 0 | 53,375.85 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 73 | Media Facilities | n/a | Sched F | 0 | 5 | 12,500.00 | 0.00 | 0.00 | 0.00 | 12,500.00 | 12,500.00 | |
| 74 | Meridian | n/a | Sched D | 1 | 0 | 106,275.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 75 | Meridian Equipment Finance, LLC | n/a | Sched F | 0 | 0 | 92,445.97 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 76 | Meridian Equipment Finance, LLC | KJOK Hollis, OK<br>KTAT Frederick OK | poc 011 | 0 | 4 | 92,445.97 | 0.00 | **92,445.97** | 0.00 | 0.00 | 92,445.97 | |
| 77 | Midland States Bank | | poc 029 | 0 | 4 | 38,666.69 | 0.00 | **38,666.69** | 0.00 | 0.00 | 38,666.69 | originally Summit Funding Group Inc. |
| 78 | Mitsubishi HC | n/a | Sched D | 1 | 0 | 45,975.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 79 | Mitsubishi HC Capital America, Inc. | | poc 005 | 0 | 4 | 45,975.00 | 0.00 | **45,975.00** | 0.00 | 0.00 | 45,975.00 | |
| 80 | New Lane Fin. B-M | | Sched D | 1 | 5 | 11,609.00 | 0.00 | **11,609.00** | 0.00 | 0.00 | 11,609.00 | Disputed + No POC |
| 81 | North Arkansas Electric | n/a | Sched F | 0 | 5 | 600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 82 | Optimum Telephone | n/a | Sched F | 0 | 5 | 1,230.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 83 | Pawnee | n/a | Sched D | 1 | 0 | 107,578.84 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 84 | Pawnee Leasing Corporation | KKNM -Friona, TX | poc 008 | 0 | 4 | 107,578.84 | 0.00 | **107,578.84** | 0.00 | 0.00 | 107,578.84 | |
| 85 | Regions Bank d/b/a Ascentium Capi | n/a | Sched F | 0 | 0 | 52,265.07 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 86 | Regions Bank d/b/a Ascentium Capital | | poc 019 | 0 | 4 | 52,265.07 | 0.00 | **52,265.07** | 0.00 | 0.00 | 52,265.07 | |
| 87 | SBA Covid-19 Disater Loan | n/a | Sched D | 1 | 0 | 65,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 88 | SecureNet | n/a | Sched F | 0 | 5 | 350.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - Recurring vendor |
| 89 | SESAC | n/a | Sched F | 0 | 5 | 375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - Recurring vendor |
| 90 | SESAC | n/a | Sched F | 0 | 5 | 16,000.00 | 0.00 | 0.00 | 0.00 | 3,700.00 | 3,700.00 | Revised amount |
| 91 | Summit | n/a | Sched F | 0 | 0 | 14,125.83 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 92 | Summit | n/a | Sched D | 1 | 0 | 38,666.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 93 | Summit | n/a | Sched D | 1 | 0 | 13,951.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 94 | Summit | KREW Plainview, TX<br>KZYP Malvern, AR | poc 023 | 0 | 4 | 14,125.83 | 0.00 | **14,125.83** | 0.00 | 0.00 | 14,125.83 | |
| 95 | Summit Natural Gas | n/a | Sched F | 0 | 5 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 96 | The County of Henderson, Texas | n/a | Sched D | 1 | 0 | 1,237.65 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 97 | The County of Henderson, Texas, co | n/a | poc 003 | | 1 | 1,237.65 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid by Media Properties |
| 98 | The County of Stephens, Texas | | Sched D | 1 | 0 | 3,524.41 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |

| | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **EXHIBIT H302** | | | | | | | | | | | |
| 2 | **NO ADMISSION OF LIABILTY** | | | | | | | | | | | |
| 3 | | | | | | | **Estimated Allow - NO ADMISSION, DEBTOR RESERVES ALL RIGHTS** | | | | | |
| 4 | **Creditor** | **Eqip Station** | **Source** | **Disputed 1 = yes** | **Class** | **Total Claim Sched/POC** | **Admin** | **Secured** | **Priority** | **Unsecured** | **Total Allow** | **Notes** |
| 99 | The County of Stephens, Texas collecting property taxes fo | | poc 001 | 0 | 1 | 3,524.41 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid by Media Properties |
| 100 | The Fundworks | n/a | Sched F | 0 | 0 | 89,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 101 | The Fundworks LLc | n/a | Sched D | 0 | 0 | 114,178.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 102 | The Fundworks LLC | n/a | poc 004 | 0 | 5 | 114,178.50 | 0.00 | 0.00 | 0.00 | 114,178.50 | 114,178.50 | UCC-1 is within preference period. |
| 103 | Turbo Capital | n/a | Sched F | 0 | 5 | 17,500.00 | 0.00 | 0.00 | 0.00 | 17,500.00 | 17,500.00 | |
| 104 | TXU Utiltiy | n/a | Sched F | 0 | 5 | 1,600.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 105 | U.S. Bank N.A. d/b/a U.S. Bank Equip | n/a | Sched F | 0 | 0 | 199,266.04 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 106 | U.S. Bank N.A. | | poc 013 | 0 | 4 | 199,266.04 | 0.00 | **199,266.04** | 0.00 | 0.00 | 199,266.04 | |
| 107 | U.S. Small Business Admin | n/a | poc 012 | 0 | 2 | 69,296.33 | 0.00 | **69,296.33** | 0.00 | 0.00 | 69,296.33 | |
| 108 | U.S. Small Business Administration | n/a | Sched F | 0 | 0 | 69,296.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 109 | Union Funding Source, Inc. | n/a | poc 025 | 0 | 5 | 110,109.25 | 0.00 | **0.00** | 0.00 | 110,109.25 | 110,109.25 | UCC-1 is within preference period. |
| 110 | United First LLC | n/a | Sched F | 0 | 0 | 7,746.48 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 111 | United First, LLC | n/a | poc 026 | 0 | 5 | 7,746.48 | 0.00 | 0.00 | 0.00 | 7,746.48 | 7,746.48 | |
| 112 | United Funding Source, Inc. | n/a | Sched F | 1 | 0 | 110,109.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 113 | Verizon Cell Phone | n/a | Sched F | 0 | 5 | 1,900.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Paid - monthly utility |
| 114 | Vertical Bridge | n/a | Sched F | 1 | 0 | 999,999.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 115 | Vertical Bridge | n/a | Sched F | 1 | 0 | 725,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 116 | Vertical Bridge REIT, LLC | n/a | Sched F | 1 | 0 | 4,546,618.86 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 117 | Vertical Bridge REIT, LLC | n/a | poc 027 | 1 | 0 | 4,546,618.86 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | |
| 118 | Vertical Bridge REIT, LLC | n/a | DE 0253 | 0 | 5 | 1,500,000.00 | 0.00 | 0.00 | 0.00 | 1,500,000.00 | 1,500,000.00 | Settlement amount |
| 119 | Wintrust Specialty Finance | n/a | Sched F | 0 | 0 | 60,112.08 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 120 | Wintrust Specialty Finance | n/a | Sched F | 0 | 0 | 84,700.97 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Superceded by POC |
| 121 | Wintrust Specialty Finance | n/a | poc 016 | 0 | 5 | 60,112.08 | 0.00 | **60,112.08** | 0.00 | 0.00 | 60,112.08 | originaly Amur - contract # n/a |
| 122 | Wintrust Specialty Finance | n/a | poc 017 | 0 | 5 | 84,700.97 | 0.00 | **84,700.97** | 0.00 | 0.00 | 84,700.97 | originaly Amur - contract # n/a |
| 123 | Zula Com | n/a | Sched F | 0 | 5 | 4,650.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | Debtor belives correct amount is $0.00. |
| 124 | **ESTIMATED TOTALS** | | | | | | **643,593.00** | **1,293,351.55** | **0.00** | **2,260,077.46** | **4,088,850.01** | |
| 125 | https://d.docs.live.net/a8cb65fc4fa3b1b3/!!!alpha files/!!!!! misc files c. 20250706/hprn plan 002/[plan exhibits HPRN 001.xlsx]H302 | | | | | | | | | | | |

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | **EXHIBIT H303 - LIQUIDATION ANALYSIS** | | | | |
| 3 | **Assets as of Petition Date** | | | | |
| 4 | **No Admission of Liability** | | | | |
| 5 | **Asset Description** | **Value on Schedule A-B (Docket No. 15)** | **Realizable Value Chapter 11** | **Realizable Value** | **NOTE** |
| 6 | Part 1: Cash and Cash Equivalents | 7,486.47 | 0.00 | 7,486.47 | |
| 7 | Part 2: Deposits and Prepayments | 0.00 | 0.00 | 0.00 | |
| 8 | Part 3: Accounts Receivable | 180,416.00 | 0.00 | 0.00 | |
| 9 | Part 4: Investments | 0.00 | 0.00 | 0.00 | |
| 10 | Part 5: Inventory, excluding agriculture assets | 0.00 | 0.00 | 0.00 | |
| 11 | Part 6: Farming and Fishing-related | 0.00 | 0.00 | 0.00 | |
| 12 | Part 7: Office Furniture, fixtures, and equipment; and collectibles | 106,000.00 | 0.00 | 25,000.00 | |
| 13 | Part 8: Machinery, equipment, and vehicles **(Scheduled at REPLACEMENT VALUE)** | 3,311,000.00 | 2,000,000.00 | 500,000.00 | **Any unencumbered equipment is scattered in various locations, equipment is specialized for the operations of this Debtor, equipment depends on equipment that would repossessed by secured lenders, and/or equipment only has value in current configurations.**<br><br>**Sale of radio stations as going concern with equipment configuration intact will lead to significantly greater value than liquidation in Chapter 7.** |
| 14 | Part 9: Real Property | 0.00 | 0.00 | 0.00 | |
| 15 | Part 10: Intangibles and intellectual property | 0.00 | 0.00 | 0.00 | |
| 16 | Part 11: All other assets | 0.00 | 0.00 | 0.00 | |
| 17 | | 3,604,902.47 | 2,000,000.00 | 532,486.47 | |
| 18 | | | | | |
| 19 | https://d.docs.live.net/a8cb65fc4fa3b1b3/!!!alpha files/!!!!! misc files c. 20250706/hprn plan 002/[plan exhibits HPRN 001.xlsx]H302 | | | | |

| | A | B | C |
|---|---|---|---|
| 1 | **EXHIBIT H304** | | |
| 2 | **Projected / Example Distribution** | | |
| 3 | **NO ADMISSION OF LIABILITY** | | |
| 4 | **See also Exhibit H302** | | |
| 5 | Sale Proceeds | 2,000,000.00 | Low end estimate of total sales proceeds |
| 6 | Est. distribution to admin. + cures | 643,593.00 | |
| 7 | Est. distribution to secureds | 1,293,351.55 | |
| 8 | Est. distribution priority | 0.00 | |
| 9 | Est. unsecured | 63,055.45 | |
| 10 | | | |
| 11 | Sale Proceeds | 2,250,000.00 | Example distribution higher sales proceeds |
| 12 | Est. distribution to admin. + cures | 643,593.00 | |
| 13 | Est. distribution to secureds | 1,293,351.55 | |
| 14 | Est. distribution priority | 0.00 | |
| 15 | Est. unsecured | 313,055.45 | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | https://d.docs.live.net/a8cb65fc4fa3b1b3/!!!alpha files/!!!!! misc files c. 20250706/hprn plan 002/[plan exhibits HPRN 001.xlsx]H302 | | |

# EXHIBIT H305

## RETAINED CAUSES OF ACTION

Any and all avoidance actions under Chapter 5 of the Bankruptcy Code.

Any and all actions by which the Debtor may challenge the security interest or lien of any party or with respect to any property.